# 97 DTA 178

RECEIVED

JAN 1 4 1998

SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I - SAN JUAN**
**PANEL III**

CARLOS LOPEZ FELICIANO, COMO PRESIDENTE Y EN
REPRESENTACION DE LA ASAMBLEA MUNICIPAL DE SAN JUAN
Apelado

v.

HON. SILA M. CALDERON, ALCALDESA DE SAN JUAN; BROWNING FERRIES INDUSTRIES OF
P.R., INC.; EL COQUI DE SAN JUAN; E.C. WASTE, INC. Y SANIFILL OF SAN JUAN, INC.
Apelantes

Núm. KLAN-96-00856

San Juan, Puerto Rico, a 15 de agosto de 1997

Panel integrado por su Presidenta, la Jueza Ramos Buonomo,
y los Jueces González Román y Córdova Arone

Ramos Buonomo, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La parte apelante, el Municipio de San Juan (en adelante, *"Municipio")*, solicita la revocación de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 19 de junio de 1996. Mediante dicha sentencia el tribunal apelado decretó la nulidad de dos contratos para el servicio de recogido de desperdicios sólidos otorgados por el Municipio a favor de las compañías co-demandadas Browning-Ferries Industries of Puerto Rico y El Coquí de San Juan (en adelante, *"BFI"* y *"El Coquí",* respectivamente).

En su recurso, el Municipio le imputa al Tribunal de Primera Instancia la comisión de los siguientes errores:

*"1. Erró el Honorable Tribunal de Instancia [sic] al reconocerle legitimación activa al Presidente de la Asamblea Municipal para impugnar la validez de dos contratos otorgados por el Alcalde para recoger y disponer de desperdicios sólidos en varios sectores del municipio.*

*2. Erró el Honorable Tribunal de Instancia [sic] al determinar que los contratos otorgados por el Alcalde para el recogido y disposición de desperdicios sólidos en varios sectores residenciales del municipio eran nulos para el año 95-96.*

*3. Erró el Honorable Tribunal de Primera Instancia al resolver que los contratos otorgados para el año 1995-95 [sic] eran nulos sin que la parte demandante-apelada hubiese establecido la defensa de ultra de [sic] vires con la preponderancia de la prueba."*

Habiéndose examinado el recurso de apelación, el alegato de la parte apelada, la ley y la jurisprudencia, revocamos la sentencia apelada por los siguientes fundamentos.

### I

En 1995, el Municipio decidió privatizar parte del servicio doméstico de recolección y reciclaje de desperdicios sólidos. El Municipio determinó que las compañías que cualificaban eran BFI, El Coquí y City Garbage, por lo que les envió las solicitudes de propuestas. BFI y El Coquí sometieron sus cotizaciones y, luego de evaluar las propuestas, el Municipio decidió negociar con ambas compañías.

Como resultado de las negociaciones, el 25 de agosto de 1995 se firmaron los contratos con las dos compañías, sin la aprobación previa de la Asamblea Municipal. El 27 de septiembre de 1995, la Asamblea Municipal de San Juan (en adelante, *"Asamblea"),* representada por su entonces Presidente, Hon. Manuel D. Borrero García, instó una demanda de entredicho provisional, *injunction* preliminar y permanente contra el entonces Alcalde del Municipio, Hon. Héctor Luis Acevedo Pérez (en adelante, *"Alcalde"),* BFI y El Coquí, solicitando, entre otros, que se declarasen nulos los contratos suscritos entre el Municipio y las referidas compañías. ■ Alegó que los contratos eran nulos porque no habían sido autorizados por la Asamblea y se habían otorgado sin la disponibilidad de fondos.

Los días 3 y 4 de octubre de 1995, el tribunal apelado celebró una conferencia con antelación a la vista de entredicho provisional. En ésta la parte demandada cuestionó la legitimación activa de la Asamblea para impugnar los contratos por las razones alegadas de que no se habían separado fondos públicos para el pago de los contratos y que los mismos serían pagados con la asignación presupuestaria para gastos personales, lo cual requeriría el consentimiento de la Asamblea. El Sr. Juan Agosto Alicea, Asesor del Alcalde, argumentó que no estaban utilizando dinero de la partida para los gastos personales, por lo cual el tribunal le concedió un término al Municipio para que presentara una moción de sentencia sumaria. A su vez denegó la solicitud de entredicho provisional y de *injunction* preliminar. ■

Posterior a esta conferencia, la Asamblea presentó una petición enmendada, [3] la cual no fue permitida por el tribunal autorizando éste únicamente la inclusión como co-demandadas de las corporaciones que integran el consorcio El Coquí es decir, E.C. Waste, Inc. y Sanifill of San Juan, Inc.

Presentada por el Municipio la moción de sentencia sumaria y la oposición de la Asamblea, ésta solicitó, a su vez, una vista para discutir ambas mociones, señalando el tribunal una vista argumentativa para el 14 de marzo de 1996. ■ En esta vista se discutió el requisito de subasta para la otorgación de los contratos; asunto que no estaba ante el tribunal en esos momentos ya que éste había denegado la petición enmendada presentada por la Asamblea el 19 de octubre de 1995. ■ El tribunal ordenó a las partes exponer sus posiciones por escrito, luego de lo cual el caso quedaría sometido.

Así las cosas, el tribunal dictó una sentencia el 20 de mayo de 1996. En ésta, redujo la cuestión a dirimirse a si el Municipio estaba obligado a celebrar una subasta pública antes de otorgar los contratos para el recogido y reciclaje de desperdicios sólidos. No obstante, razonó que antes de resolver ese asunto, había que determinar si la Asamblea tenía legitimación activa para plantear el mismo.

El tribunal, considerando la doctrina de legitimación activa de los legisladores, determinó por analogía que la Asamblea sí tenía legitimación activa para cuestionar la actuación del Alcalde al otorgar los contratos impugnados sin celebrar una subasta pública, resolviendo seguidamente, no obstante, que el Alcalde no venía obligado a celebrar una subasta pública antes de otorgar los contratos impugnados.

Por otra parte, el tribunal, resolvió que la Asamblea no tenía legitimación activa para cuestionar la alegada actuación del Alcalde al otorgar unos contratos sin que hubiera una partida asignada en el presupuesto aprobado para cubrir las obligaciones contraídas. ■ No empece lo anterior, el tribunal **inexplicablemente** señaló a la página 9 de la sentencia lo siguiente:

*"[R]econocemos que los contratos impugnados en el caso del epígrafe son nulos, toda vez que no había partida presupuestada para el pago de los mismos. El Alcalde Acevedo debió haber incluido en su proyecto presupuestario, y la Asamblea aprobado, los pagos para dichos contratos. Por no haber cumplido los trámites de ley, dichos contratos carecen de validez legal. No obstante, en vista de que nuestro Tribunal Supremo ha diseñado una doctrina de legitimación activa sumamente limitada en casos en que legisladores comparecen a los tribunales, estamos impedidos, por la referida normativa, de reconocerle legitimación activa al Presidente de la Asamblea Municipal de San Juan para cuestionar la nulidad de los contratos."* (Citas internas omitidas.)

*Id.* a la pág. 195.

Finalmente, el tribunal en la parte dispositiva de la sentencia declaró con lugar la moción de sentencia sumaria presentada por el Municipio y, en su consecuencia, desestimó la demanda. *Id.* a la pág. 200.

Ambas partes presentaron oportunas mociones de reconsideración. En primer lugar, la Asamblea sostuvo que tenía legitimación activa para impugnar la falta de asignación presupuestaria para el pago de los contratos y argumentó, además, que era un requisito la celebración de una subasta pública.

Por su parte, el Alcalde solicitó que el tribunal eliminara de su sentencia todo lo expuesto en la página 9 de la misma en referencia a la validez de los contratos, ya que tales expresiones eran contradictorias con la parte dispositiva de la sentencia, mediante la cual se desestimó la demanda.

El tribunal acogió ambas mociones y el 19 de junio de 1996 dictó una sentencia enmendada. En ésta, el tribunal reconsideró su decisión anterior y determinó, esta vez mediante una sentencia favorable a la Asamblea, que la Asamblea tenía legitimación activa para instar el pleito, por cuanto estaba impugnando una actuación del Alcalde que violentaba las prerrogativas estatutarias de todos los miembros de la Asamblea. ■ A la página 11 de la sentencia enmendada el tribunal señala que el Alcalde separó una cantidad insuficiente de dinero de la partida de gastos no personales de la cuenta del Departamento de Control Ambiental y que separó la cantidad restante necesaria para sufragar el costo de los servicios contratados de la partida de gastos personales del Departamento de Control Ambiental. Esta segunda separación, según el tribunal, era impermisible, ya que la Ley de Municipios Autónomos no permite utilizar los fondos reservados para servicios personales para pagar los servicios no personales. El tribunal señaló que sólo se pueden realizar transferencias de crédito de la asignación para gastos personales a otras cuentas de servicios no personales cuando existe un sobrante y la Asamblea aprueba la transferencia, cosa que no sucedió en el caso de marras. ■ Por ende, el tribunal declaró con lugar la demanda y decretó la nulidad de los contratos. ■

Inconforme con esta sentencia, el Municipio presentó el recurso que nos ocupa.

## II

Antes de poder expresarnos sobre la validez de los contratos aquí impugnados, nos corresponde primordialmente dilucidar si la Asamblea, representada por su Presidente, puede legalmente demandar al Alcalde del mismo municipio por alegadamente haber otorgado unos contratos sin una asignación presupuestaria y sin la autorización de la Asamblea. Resolvemos en la negativa. Veamos.

La política pública que inspiró la aprobación de la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4001 *et seq.*, (en adelante, *"Ley 81"*), fue el *"otorgar a los municipios el máximo posible de autonomía y proveerles las herramientas financieras y los poderes y facultades necesarias para asumir un rol central y fundamental en su desarrollo urbano, social y económico".* ■ Ello no obstante, la autonomía de todo municipio en el orden jurídico, económico y administrativo está subordinada y será ejercida de acuerdo con la Constitución del Estado Libre Asociado de Puerto Rico y la Ley 81, *supra.* ■

El Artículo 1.003(u) de la Ley 81 define el municipio como *"una demarcación geográfica con todos sus barrios, que tiene nombre particular y está regida por un gobierno local compuesto de un Poder Legislativo y un Poder Ejecutivo".* 21 L.P.R.A. sec. 4001(u). De ahí surge que cada gobierno municipal se compone de una asamblea y un alcalde.

En cuanto a la capacidad legal de los municipios, el Artículo 2.001(b) de la Ley 81, *supra,* les confiere la capacidad para demandar y ser demandados. 21 L.P.R.A. sec. 4051(b). La ley específicamente faculta al alcalde a *"[r]epresentar al municipio en acciones judiciales o extrajudiciales promovidas por o contra el municipio, comparecer ante cualquier tribunal de justicia, foro o agencia pública del Gobierno del Estado Libre Asociado de Puerto Rico y del Gobierno de los Estados Unidos de América y sostener toda clase de derechos, acciones y procedimientos".* 21 L.P.R.A. sec. 4109(e). Por otro lado, le permite al Presidente de la Asamblea *"[r]epresentar y comparecer a nombre de la Asamblea en todos los actos oficiales y jurídicos que así se requiera por ley, ordenanza, resolución o reglamento".* 21 L.P.R.A. sec. 4202(a).

Con este trasfondo en mente, pasemos ahora a exponer sucintamente la doctrina de la legitimación activa.

El Tribunal Supremo ha dispuesto que *"el examen de la legitimación activa es un mecanismo usado por los tribunales para delimitar su propia jurisdicción y no adentrarse en los dominios de otras ramas de gobierno y no lanzarse a resolver cuestiones hipotéticas o planteadas dentro de un contexto inadecuado". Hernández Torres v. Hernández Colón,* ___ *D.P.R.* ___ (1992), **92 J.T.S. 123**, a la pág. 9931 (en adelante, *"Hernández Torres II"*); *E.L.A. v. P.R. Tel. Co.,* 114 D.P.R. 394, 399

(1983). Conforme a la doctrina de la legitimación activa, el promovente de la acción debe cumplir con los siguientes requisitos: (1) que ha sufrido un daño claro y palpable; (2) que el daño es real, inmediato y preciso y no uno abstracto o hipotético; (3) que la causa de acción surge bajo el palio de la Constitución o de una ley; y (4) que existe una conexión entre el daño sufrido y la causa de acción ejercitada. *P.P.D. v. Rosselló González*, ___ D.P.R. ___ (1995), **95 J.T.S. 165**, a la pág. 437; *Asoc. de Maestros v. Torres*, ___ D.P.R. ___ (1994), **94 J.T.S. 145**, a la pág. 446; *Noriega Rodríguez v. Hernández Colón*, ___ D.P.R. ___ (1994), **94 J.T.S. 35**, a la pág. 11651; *Hernández Torres II, supra*, a la pág. 9932; *Hernández Torres v. Hernández Colón*, ___ D.P.R. ___ (1992), **92 J.T.S. 16**, a la pág. 9_____95 (en adelante, *"Hernández Torres I"); Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407, 414 (1982).

A la luz de los principios antes expuestos, se les ha reconocido acción legitimada a los legisladores para defender un derecho personal a base de un daño que ha sufrido vinculado con su función legislativa. Hernández Torres I, *supra*, a la pág. 9196. Sin embargo, los legisladores no tienen capacidad jurídica para invocar un *"interés público"* o *"perjuicio general". Id.* a las págs. 9,197-98.

En la sentencia apelada, el tribunal expuso la doctrina de legitimación activa de los legisladores, más resolvió que no podía seguir por analogía dichas normas ya que *"las disposiciones de la Ley de Municipios Autónomos confieren legitimación activa a la Asamblea Municipal y al Alcalde para cuestionar cualquier irregularidad en que se incurra en el desembolso o erogación de sus fondos".* ██ Se trata, según el tribunal, de *"un reconocimiento estatutario de legitimación activa".* ██ Discrepamos.

Entendemos que la doctrina antes expuesta sobre legitimación de los legisladores puede aplicarse por analogía a la Asamblea y a sus miembros. El Artículo 5.054 de la Ley 81 señala que todas las limitaciones constitucionales y legales impuestas a la Asamblea Legislativa y a sus miembros serán aplicables hasta donde sea posible a la Asamblea Municipal y a sus miembros. 21 L.P.R.A. sec. 4204. Más aún, dicho artículo dispone que los miembros de la Asamblea tendrán los deberes y atribuciones que les señala la ley. *Id.*

Seguidamente, el Artículo 5.005 de la Ley 81 establece las facultades y los deberes generales de la Asamblea. 21 L.P.R.A. sec. 4205. Dicho artículo no faculta expresamente a la Asamblea o a sus miembros para demandar al Alcalde.

Al aplicar la doctrina de la legitimación activa al caso de autos, debemos determinar si la Asamblea intenta proteger alguna prerrogativa estatutaria.

En su alegato, la Asamblea asume la posición vaga de que tiene legitimación activa porque tiene derecho a defender sus prerrogativas estatutarias. No indica, sin embargo, cuáles de sus prerrogativas se vieron afectadas en el caso de autos, como tampoco lo hace el tribunal en la sentencia apelada.

Concluimos al igual que el tribunal *a quo* en la primera sentencia de 20 de mayo de 1996 y resolvemos que la Asamblea no tiene legitimación activa para impugnar la alegada actuación del Alcalde al otorgar unos contratos sin que hubiera una partida asignada en el presupuesto aprobado para cubrir las obligaciones contraídas en los mismos. Ello es así, ya que no surge de la Ley 81 tal prerrogativa a favor de la Asamblea, ni se cumplen los requisitos antes expuestos sobre legitimación activa.

Los casos *De Jesus Ortiz v. Rivera Vargas*, ___ D.P.R. ___ (1996), **96 J.T.S. 44**, y *Hatton v. Munic. de Ponce*, ___ D.P.R. ___ (1994), **94 J.T.S. 2**, citados en la sentencia apelada y en el alegato de la Asamblea, respectivamente, son distinguibles del caso de autos. En *De Jesus Ortiz*, el Tribunal Supremo, mediante sentencia, declaró nulos unos aumentos de salarios otorgados por el entonces alcalde del municipio de Quebradillas para sí y otros empleados municipales sin que hubiera una partida aprobada por la Asamblea Municipal en el presupuesto. En *Hatton* el Tribunal Supremo declaró nulo un contrato para la adquisición de un equipo médico-quirúrgico para cuyo otorgamiento el municipio no había celebrado una subasta, contrario a la ley y ausente un estado de emergencia. En ninguno de los dos casos citados se cuestionó la legitimación activa de la parte demandante, la cual en ambos casos eran personas particulares; es decir, tampoco se trataba de la Asamblea demandando al

Alcalde, como sucede en el presente caso.

De otra parte, la Asamblea sostuvo ante el tribunal *a quo* que el Alcalde hizo una transferencia de la partida de gastos personales a la partida de gastos no personales para cubrir el costo de las obligaciones contraídas, sin obtener la aprobación previa de la Asamblea.

Resolvemos que la Asamblea sí tiene legitimación activa para cuestionar esta actuación del ejecutivo, ya que la Ley 81 dispone claramente que será necesaria la previa aprobación de la Asamblea para las transferencias de crédito de la asignación presupuestaria para el pago de servicios personales a otras cuentas. 21 L.P.R.A. sec. 4308. Se trata, pues, de una prerrogativa estatutaria que la Asamblea puede defender ante un tribunal.

Como consecuencia, debemos determinar si hubo una transferencia de crédito de la partida de gastos personales a la partida de gastos no personales, tal como alegó la Asamblea y como determinó el tribunal apelado. Resolvemos que no la hubo. Veamos.

Contrario a lo concluido por el tribunal apelado, los documentos que obran en el expediente no demuestran que hubo una transferencia de crédito de la partida de gastos personales a la partida de gastos no personales. Consta en el expediente una certificación de la Sa. Myrtelina López Montañez, Secretaria de la Asamblea, de 26 de septiembre de 1995, en donde ella certifica que los contratos para el recogido y disposición de desperdicios sólidos otorgados con las compañías BFI y El Coquí no fueron presentados para la aprobación de la Asamblea. ▮ Dicha certificación no menciona nada con respecto a una transferencia. Más aún, el Sr. Juan Agosto Alicea, Asesor del Alcalde, prestó dos declaraciones juradas a los efectos de que el Municipio no había llevado a cabo una transferencia de crédito de la asignación presupuestaria correspondiente a servicios profesionales a la cuenta de gastos no personales del presupuesto general de gastos del Municipio. ▮ En otra certificación de 2 de abril de 1996, surge que no se habían efectuado pagos por los servicios prestados por BFI y El Coquí contra la partida de gastos personales del Municipio. ▮

A lo sumo, se desprende del expediente que hubo una transferencia de $2,000,000.00 de la partida de gastos personales del Departamento de Control Ambiental del Municipio a la partida de gastos personales del Departamento de Salud del Municipio; asimismo, consta que hubo una transferencia de $2,000,000.00 de la partida de gastos no personales del Departamento de Salud del Municipio a la partida de gastos no personales del Departamento de Control Ambiental del Municipio. ▮

Por ende, a la luz de la prueba documental presentada, resolvemos que es incorrecta la determinación del tribunal apelado de que ocurrió una transferencia de la partida de gastos personales a la partida de gastos no personales.

Recordemos que el tribunal revisor estará en las mismas condiciones que el tribunal revisado para examinar y hacer determinaciones sobre los documentos que obran en el expediente. *Asoc. Auténtica Empl. v. Municipio de Bayamón,* 111 D.P.R. 527, 530 (1981).

En la primera sentencia dictada el 20 de mayo de 1996, el tribunal *a quo* había determinado que la Asamblea tenía legitimación activa para cuestionar el hecho de que se otorgaron los contratos sin la celebración de una subasta. Concurrimos con esta determinación, ya que el Artículo 11.006(d) de la Ley 81, *supra*, le otorga a la Asamblea la facultad de autorizar que se prescinda de una subasta y se atienda el asunto administrativamente cuando esto resulte más económico y ventajoso a los intereses del municipio. 21 L.P.R.A. sec. 4506(d).

Pasemos, pues, a considerar si en el caso de autos resultaba necesario celebrar una subasta pública antes de otorgarse los contratos impugnados.

Los Artículos 11.001 al 11.006 de la Ley 81, *supra*, contienen las normas generales que deben seguir los municipios para la compra de equipo, suministros y servicios. 21 L.P.R.A. secs. 4501-4506, respectivamente. Específicamente, el Artículo 11.001 dispone cuándo es necesario celebrar una subasta pública y el Artículo 11.002 establece las exclusiones a dichas normas. 21 L.P.R.A. secs. 4501 y 4502, respectivamente.

Por otro lado, el Artículo 2.006(k) de la Ley 81, *supra*, establece una exclusión adicional en el área de desperdicios sólidos. La citada disposición expresa en parte que *"[ e]starán excluidos del requisito de subasta pública,."*... y podrán otorgarse por cualquier término de duración, los contratos para el establecimiento de plantas o facilidades de disposición de desperdicios sólidos y la prestación de servicios de disposición de desperdicios sólidos.... 21 L.P.R.A. sec. 4056(k).

A su vez, la Ley 81, *supra*, define el concepto *"plantas o instalaciones para la disposición de desperdicios sólidos"* de la siguiente manera:

(3) *"Plantas o instalaciones para la disposición de desperdicios sólidos" significará e incluirá terrenos, mejoras, estructuras, equipo, maquinaria, vehículos, o cualquier otra propiedad utilizada por cualquier entidad pública o privada para la disposición de desperdicios sólidos o su conversión en formas utilizables de energía y otros productos.* **Este término incluirá, sin que se entienda como una limitación,** *las plantas o fábricas establecidas con ese propósito, el equipo necesario para la producción y transmisión de energía, las estaciones para la transferencia de energía, las estructuras,* **vehículos y equipo para la transportación, almacenamiento o procesamiento de desperdicios** *sólidos, estaciones de trasbordo, los vertederos de relleno sanitario y los depósitos para residuos del proceso."* (Enfasis suplido.) 21 L.P.R.A. sec. 4055(a)(3).

En vista de la determinación no refutada del tribunal *a quo* de que los contratos aquí impugnados son para el servicio de recogido de desperdicios sólidos y reciclaje, es forzoso concluir que dichos contratos están exentos de la celebración de una subasta pública. 21 L.P.R.A. sec. 4056(k). Ello es así toda vez que la Ley 81, *supra*, como hemos visto, excluye del requisito de subasta los contratos para el establecimiento de plantas o facilidades de disposición de desperdicios sólidos y este término, a su vez, incluye los vehículos y equipo para la transportación de desperdicios sólidos, elemento esencial del servicio de recogido de los desperdicios sólidos.

Cuando una ley es clara y libre de toda ambiguedad, los tribunales no deben obviar su letra bajo el pretexto de cumplir con su espíritu. Se entiende que el texto claro de una ley es la expresión por excelencia de la interpretación legislativa. *Sistema Univ. Ana G. Méndez, Inc. v. C.E.S.*, ___ D.P.R. ___ (1997), **97 J.T.S. 22**, a la pág. 647; *Rojas v. Méndez & Co.. Inc.*, 115 D.P.R. 50, 53-54 (1984).

Concluimos, pues, que la demanda instada por la Asamblea en el caso de marras debió haberse desestimado, sin entrar el tribunal a considerar la validez de los contratos, toda vez que no hubo prueba de que las únicas dos prerrogativas estatutarias ▮ que podía defender la Asamblea fueron vulneradas por la actuación del Alcalde al otorgar los contratos aquí impugnados.

En virtud de la decisión a la cual hemos llegado, no discutiremos los restantes dos señalamientos de error.

### III

Por los fundamentos antes expuestos, se revoca la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 19 de junio de 1996 y se desestimó la demanda instada por la Asamblea Municipal de San Juan contra la Alcaldesa.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 178

**1.** Mediante una resolución dictada el 15 de enero de 1997, se ordenó a la Secretaría de este Tribunal corregir el epígrafe del caso para sustituir los nombres del Lcdo. Carlos López Feliciano, como parte apelada, y de la Hon. Sila M. Calderón, Alcaldesa de San Juan, como parte co-apelante, a tenor con la Regla 22.4 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 22.4.

**2.** Véase Minutas de 3 y 4 de octubre de 1995, Recurso de Apelación, Apéndice, a las págs. 45-55.

No consta en el expediente ante nuestra consideración una copia de la resolución del tribunal *a quo* denegando la solicitud de entredicho provisional y de *injunction* preliminar. Tampoco se desprende si alguna de las partes recurrió de tal determinación. Ello no obstante, en la sentencia de 20 de mayo de 1996, el tribunal señala a la página 3 que luego de analizar los argumentos presentados por las partes en la conferencia celebrada los días 3 y 4 de octubre de 1995, el tribunal denegó la solicitud de injuncton preliminar por razón de no sér claro el derecho de la Asamblea a tal remedio.

**3.** En la Petición Enmendada, la Asamblea cuestionó, entre otras cosas, el que el Alcalde no celebró una subasta pública para la otorgación de los contratos.

**4.** Véase Recurso de Apelación, Apéndice, a las págs. 115-118.

**5.** Inferimos que al no ser objetado el planteamiento de este asunto en la vista argumentativa, el tribunal reconsideró su posición anterior y permitió dicho planteamiento.

**6.** Véase Sentencia de 20 de mayo de 1996, Recurso de Apelación, Apéndice, a las págs. 194-195.

**7.** El tribunal no especificó cuáles prerrogativas estatutarias de la Asamblea fueron afectadas.

**8.** Véase Sentencia Enmendada, Recurso de Apelación, Apéndice, a las págs. 254-255.

**9.** No discutió el asunto de la subasta pública por entenderlo innecesario en virtud de la decisión a la cual había llegado.

**10.** Art. 1.002 de la Ley 81, *supra*, Leyes de Puerto Rico, 1991, Parte I, a la pág. 461.

**11.** Art. 1.006 de la Ley 81, *supra*, 21 L.P.R.A. sec. 4004; *López Fed. Coms. Unidos v. Mun. de San Juan,* 121 D.P.R. 75, 95 (1988).

**12.** Esta posición es contraria a la que asumió el tribunal *a quo* en la sentencia de 20 de mayo de 1996, en donde aplicó la referida doctrina la Asamblea.

**13.** Recurso de Apelación, Apéndice, a la pág. 251. Como fundamento para dicha conclusión, el tribunal hizo una interpretación liberal de varias disposiciones de la Ley 81, basándose principalmente en la opinión concurrente emitida por el Juez Asociado, Hon. Antonio S. Negrón García, en el caso de *Jesús Ortiz v. Rivera Vargas,* ___ D.P.R. ___ (1996), **96 J.T.S. 44,** resuelto mediante sentencia. Valga señalar que el asunto en dicho caso no giraba en torno a la legitimación activa de la parte demandante.

**14.** Véase Recurso de Apelación, Apéndice, a la pág. 19.

**15.** *Id.*, a las págs. 105 y 128.

**16.** *Id.*, a la pág. 129.

**17.** Véase Recurso de Apelación, Apéndice, a las págs. 233-235.

**18.** Es decir, autorizar las transferencias de créditos de la partida de gastos personales a otras partidas y permitir que se prescinda del requisito de subasta pública.