ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandante y recurrido, *v.* PUERTO RICO TELEPHONE COMPANY, demandada y recurrente.

*Número:* R-82-444 *Resuelto:* 15 de junio de 1983

*José R. Ortiz*, abogado de la recurrente; *Miguel Pagán, Procurador General Interino*, y *Doris M. Santiago*, del Departamento de Justicia, abogados del Estado Libre Asociado de Puerto Rico.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

La Oficina de Asuntos Monopolísticos del Departamento de Justicia de Puerto Rico requirió a la Puerto Rico Telephone Company ("la Telefónica") la información siguiente sobre ciertos teléfonos: (1) el nombre del abonado, (2) su

dirección actual, (3) la fecha de instalación y, (4) de no estar en servicio, el nombre del usuario anterior y la fecha en que se dio de baja.

La Telefónica suplió la información requerida sobre aquellos usuarios cuyos nombres y direcciones constan en el directorio telefónico, mas se negó a suministrar la información sobre los números no publicados. La compañía fundó su negativa en una cláusula de confidencialidad existente en el contrato de servicios con los abonados de esos teléfonos. La Telefónica no notificó a los usuarios del requerimiento efectuado por el Departamento.

El Estado demandó a la Telefónica al amparo del Art. 17 de la Ley Núm. 77 de 25 de junio de 1964 (10 L.P.R.A. sec. 273), para obtener la información denegada. La Telefónica alegó, entre otros planteamientos, que el requerimiento en cuestión violenta los derechos constitucionales de los referidos usuarios, a quienes tampoco les informó entonces de la acción pendiente.

El Tribunal Superior se negó a considerar el argumento constitucional, por entender que la Telefónica carece de capacidad jurídica para plantearlo, y ordenó que se brindase la información solicitada. La Telefónica ha recurrido a este foro.

1. *La capacidad de la Telefónica para plantear el derecho a la intimidad de los usuarios.*

■ La regla general prevaleciente en el Tribunal Supremo de los Estados Unidos, en lo que va de siglo, es que las partes en litigios penales o civiles en las cortes federales tienen capacidad tan solo para plantear sus propios derechos contra actos alegadamente ilegales del gobierno. *Gladstone, Realtors* v. *Village of Bellwood*, 441 U.S. 91, 100 (1979); *Williams* v. *Eggleston*, 170 U.S. 304, 309 (1898). La norma no posee rango constitucional, únicamente representa uno de varios métodos que emplea en forma voluntaria el Tribunal para ejercer con moderación y prudencia

sus poderes constitucionales. *Griswold* v. *Connecticut*, 381 U.S. 479 (1965).

La regla no se ha aplicado uniformemente. Se han reconocido muchas excepciones. Algunas veces se ha intentado, con éxito discutible, formular una explicación coherente de la norma general y sus variantes. La formulación judicial más conocida es la expuesta en *Singleton* v. *Wulff*, 428 U.S. 106, 113-116 (1976). (La opinión principal sólo obtuvo una pluralidad de votos.)

*Singleton*, supra, expone dos razones para la regla general. La primera es que los tribunales no deben adjudicar innecesariamente los derechos de terceros que no tienen interés en plantearlos o que los disfrutarán, suceda lo que suceda en el pleito. La segunda es que los terceros pueden, usualmente, argumentar sus propios derechos en forma más eficaz. Cuando, en vista de la relación entre el litigante y el tercero, los derechos de éste habrán de afectarse y cuando el litigante está en condiciones de defender adecuadamente el derecho del tercero, se considera, en cambio, que existe entonces capacidad a tal fin.

Los comentaristas favorecen diversos enfoques del problema, aunque por lo general concurren en que el Tribunal Supremo de Estados Unidos aún no ha logrado establecer convincentemente los principios que deben regir la invocación del *jus tertii* (derecho de terceros).

R. Sedler, en *Standing to Assert Constitutional Jus Tertii in the Supreme Court*, 71 Yale L.J. 599, 627 (1962), estima que deben tomarse en cuenta cuatro factores al determinar la capacidad para invocar los derechos de otros: (1) la índole del interés del litigante, (2) la importancia del derecho invocado, (3) la sustancialidad de la relación entre el reclamante y las terceras personas, y (4) la factibilidad de que los terceros puedan hacer valer sus propios derechos. Véase: *Zachry International* v. *Tribunal Superior*, 104 D.P.R. 267, 272 (1975).

La posición de Sedler ha sido criticada duramente. Se ha

argumentado que el tercer factor confunde problemas de *jus tertii* con los requisitos jurisdiccionales del Art. III de la Constitución de Estados Unidos y que el segundo, al sujetar los derechos constitucionales a un sistema de rangos, los debilita. Se ha expresado, además, que Sedler no tomó en consideración, entre otras, cuestiones tales como el interés en preservar los derechos de terceros, el riesgo de resultados fortuitos y la deseabilidad de examinar los planteamientos que se hagan dentro de un marco concreto de hechos. Note, *Standing to Assert Constitutional Jus Tertii*, 88 Harv. L. Rev. 423, 442–443, n. 96 (1974); M. Rohr, *Fighting for the Rights of Others: The Troubled Law of Third-Party Standing and Mootness in the Federal Courts*, 35 U. Miami L. Rev. 393, 462–463, n. 293 (1981).

■ La tendencia actual es decididamente hacia la liberalización y simplificación de las normas que rigen esta zona del Derecho. K. Davis, *The Liberalized Law of Standing*, 37 U. Chi. L. Rev. 450 (1970); L. Jaffe, *Standing Again*, 84 Harv. L. Rev. 633 (1971). Rohr estima que se debe reconocer la capacidad para invocar el *jus tertii* en todo caso, excepto: (1) cuando el tribunal crea razonablemente que el litigante no representará debidamente el interés de los terceros concernidos, o (2) cuando el cuadro de hechos no sea lo suficientemente concreto como para permitir la adjudicación de las cuestiones presentadas, conforme las normas relativas a la madurez de las controversias. Rohr habla también de la necesidad de una relación causal entre el daño al litigante y la acción gubernamental impugnada. *Op. cit.*, pág. 463.

Wright, Miller y Cooper consideran que "cualquier reglamentación directa de una relación debe conferirle capacidad a cualquier parte de ésta para argumentar la invalidez de la reglamentación bajo cualquier base". 13 *Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d*, Sec. 3531, pág. 79 (Supl. 1980).

Laurence Tribe ha sugerido que se reconozca capacidad

para demandar, en todo caso en que el deber impuesto al litigante puede afectar probablemente los derechos de un tercero o cuando éste no está en posición de hacerlos valer. L.H. Tribe, *American Constitutional Law*, Mineola, New York, The Foundation Press, Inc., 1978, pág. 112.

■ En *Salas Soler* v. *Srio. de Agricultura*, 102 D.P.R. 716 (1974), comentamos ampliamente las dificultades de este campo. Véase: *Data Processing Service* v. *Camp*, 397 U.S. 150, 151 (1970). Estas dificultades tienen diversas fuentes. En primer término, tendemos a veces a olvidar que, a fin de cuentas, la doctrina de capacidad para demandar es tan solo un mecanismo que los tribunales utilizan en ocasiones para delimitar su propia jurisdicción, para no adentrarse en los dominios de otras ramas del gobierno, para no lanzarse a resolver cuestiones hipotéticas o planteadas dentro de un contexto inadecuado de hechos, para ejercer, en suma, las "virtudes pasivas" sobre las que teorizaba Alexander Bickel. Bickel, *The Supreme Court 1960 Term—Foreword: The Passive Virtues*, 75 Harv. L. Rev. 40 (1961). Hay que ir, para sopesarlas a plena luz, a las fuerzas subyacentes que motivan en la realidad la abstención o intervención judicial en una situación dada.

■ En segundo lugar, nos inclinamos mucho a la generalización, a sentar normas con vocación de universalidad en circunstancias muy dispares que requieren tratamientos diferentes. El familiar modelo de la contienda privada ha nublado en algunos casos, por ejemplo, el análisis de la acción pública emergente. Se sigue buscando por algunas cortes el daño personal al litigante, cuando el problema es formular otro juego de normas para la consideración de cuestiones de vasto interés público. A. Chayes, *The Supreme Court 1981 Term—Foreword: Public Law Litigation and the Burger Court*, 96 Harv. L. Rev. 4 (1982).

Estimamos que debe distinguirse entre situaciones diversas. En el caso de autos, nos limitaremos a determinar si debe reconocerse capacidad para demandar, en circuns-

tancias como las que distinguen este pleito. El caso actual presenta la peculiaridad de que la Telefónica disfruta claramente de la facultad de que se dilucide si, por razón del contrato que suscribe con abonados que exigen, pagando por ello, que sus números de teléfono no se den a la publicidad, ella puede negarse a suministrar la información requerida por el Departamento de Justicia. La Telefónica tiene, obviamente, interés directo en la cuestión. La peculiaridad consiste en que la resolución del asunto puede afectar el derecho de terceros. Éstos, a su vez, se encuentran en la posición singular de que no pueden defender su derecho, porque desconocen la existencia del pleito. Su notificación y comparecencia en esta causa, además, puede frustrar la investigación del gobierno o causar la identificación de las personas que podrían reclamar, con razón o sin ella, su derecho a la intimidad. Véanse: N.A.A.C.P. v. *Alabama*, 357 U.S. 449 (1958); *Warth* v. *Seldin*, 422 U.S. 490 (1975).

 Las razones que se han esgrimido usualmente para intentar justificar la determinación de incapacidad para demandar, o que han apoyado *sub rosa* tal juicio, están ausentes de este litigio. No se trata de invadir terrenos que deban reservarse a otras agencias del gobierno, ni existe otra base sólida para la abstención judicial. Aun dentro del modelo clásico de lo que constituye un "caso" o "controversia", las partes ocupan la tradicional posición adversaria que caracteriza el modelo. La Telefónica está sujeta a sufrir daño. La controversia se presenta dentro de un marco de hechos concretos; está madura para resolverse. La Telefónica está en condiciones de argumentar adecuadamente —y en efecto lo ha hecho— los derechos de las terceras personas concernidas. Éstas, a su vez, no se encuentran en posición ideal para hacerlos valer.(¹) Estamos ante una

----

(¹) Sobre el problema de la representación adecuada y el de la posición del tercero para reclamar directamente sus derechos, resolvemos prospectivamente que en situaciones análogas a la actual los tribunales deben considerar la alta deseabilidad de nombrar un *amicus curiae* para representar al tercero o de que se

situación especial en que, no importa el enfoque que se prefiera, el de Sedler, el de Rohr, el de Wright, Miller y Cooper, el de Tribe, el de Chayes o el de *Singleton,* supra, la capacidad de la parte concernida para invocar el *jus tertii,* es incuestionable. A la luz de los valores verdaderamente en juego y sin pretensión de sentar una norma aplicable a todo género de circunstancias, fallamos que la Telefónica está facultada para plantear los derechos de intimidad que puedan poseer sus abonados en la situación específica de hechos que caracteriza el caso de autos.

2. *Naturaleza del derecho a la intimidad de los usuarios y el poder de investigación del Estado.*

██ Las Secs. 1, 8 y 10 del Art. II de la Constitución del Estado Libre Asociado protegen el derecho de intimidad de nuestros ciudadanos. Ocupan un lugar privilegiado en la gama de derechos que la Constitución ampara. *Cortés Portalatín* v. *Hau Colón,* 103 D.P.R. 734, 738 (1975); *E.L.A.* v. *Hermandad de Empleados,* 104 D.P.R. 436, 439–440 (1975); *Figueroa Ferrer* v. *E.L.A.,* 107 D.P.R. 250, 258–263 (1978). Esto no quiere decir que el derecho a la intimidad vence a todo otro valor en conflicto bajo todo supuesto concebible.

El caso de autos envuelve un choque entre el interés del Estado en obtener acceso a información pertinente a una investigación y el derecho de los individuos a su intimidad. Examinemos la dimensión y fuerza de estos valores dentro de la situación específica que presenta este caso.

██ La Sec. 10 del Art. II de la Constitución del Estado Libre Asociado escuda a los ciudadanos contra citaciones administrativas irrazonables. Nuestra jurisprudencia establece tres criterios para determinar la razonabilidad de una citación proveniente de una agencia adminis-

---

le notifique al tercero del pleito, sin lesionar sus intereses o los del Estado. Véase: Tribe, *op. cit.,* sec. 3-29, pág. 114. Cuando puedan lesionarse los intereses del Estado, deberá procederse a nombrar un *amicus curiae,* nombramiento que debe recaer en un abogado o abogados prominentes, quienes por fuerza tendrían que rendir sus servicios *pro bono publico.*

trativa: la investigación debe estar dentro de la autoridad de la agencia; el requerimiento no debe ser demasiado indefinido y la información solicitada debe ser pertinente a la investigación. *Cooperativa Cafeteros P.R.* v. *Colón Torres*, 84 D.P.R. 278 (1961); *Comisionado de Seguros* v. *Bradley*, 98 D.P.R. 21 (1969). El cumplimiento con estos requisitos no se ha cuestionado en este pleito. No podría serlo. La Oficina de Asuntos Monopolísticos tiene la facultad para expedir citaciones o requerir documentos e información pertinentes a las investigaciones que conduzca. Art. 15(2) de la Ley Núm. 77 de 25 de junio de 1964 (10 L.P.R.A. sec. 271(2)). La información es pertinente a la investigación que realiza la agencia sobre supuestas prácticas ilegales mediante el uso de teléfonos. La información que se requiere es precisa.

Quedan por determinar los criterios que deben guiar la discreción judicial, cuando la facultad investigativa de una agencia estatal choca con el derecho a la intimidad en contextos análogos al presente.

En *Pueblo* v. *Lebrón*, 108 D.P.R. 324, 331 (1979), expresamos que: "La cuestión central es si la persona tiene un derecho razonable a abrigar, donde sea, dentro de las circunstancias del caso específico, la expectativa de que su intimidad se respete." *Katz* v. *United States*, 389 U.S. 347 (1967). En *United States* v. *Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3rd Cir. 1980), fundado en *Whalen* v. *Roe*, 429 U.S. 589 (1977), se enumeran los factores a sopesarse, conforme la referida corte:

> Los factores que deben considerarse para resolver que se justifica determinada intrusión en la esfera de intimidad de un individuo son el tipo de documento requerido, la información que contiene o podría contener, la posibilidad de perjuicio por cualquier divulgación subsiguiente no consentida, el daño que la divulgación pueda ocasionarle a la relación que generó los documentos, la adecuacidad de las medidas encaminadas a prevenir la divulgación no autorizada, el grado de necesidad de acceso a la información y el hecho de si existe un mandato estatutario expreso, una política pública articulada u otro

interés público reconocible que milite a favor del acceso. (Traducción nuestra.)

En el género de casos que nos concierne aquí, el criterio dominante debe continuar siendo la existencia de una expectativa razonable de que se respete la intimidad del individuo. Los factores enumerados en *Westinghouse Elec. Corp.*, supra, pueden ser de ayuda, mas claramente exigen refinamiento y ajustes. La importancia del documento requerido o la naturaleza de la información solicitada no puede de por sí, por ejemplo, justificar la invasión de la intimidad de una persona.

En el caso de autos, los usuarios con teléfonos privados aseguran, mediante la cláusula de confidencialidad inserta en su contrato con la compañía, que sus teléfonos no figuren en el listado público y que sólo sus amigos o relacionados tengan acceso telefónico a ellos. ¿Es razonable pensar que el pago extra por un teléfono privado le debe conceder también al abonado un baño de inmunidad contra el poder investigativo, legítimamente empleado, de una agencia gubernamental? A nuestro juicio, no. No existe aquí posibilidad de perjuicio indebido por una divulgación subsiguiente no consentida. El estatuto que faculta al Departamento de Justicia a expedir citaciones dispone, en parte, que:

> La información obtenida en el uso de las facultades otorgadas en esta sección se mantendrán [*sic*] en estricta confidencialidad, excepto en tanto sea necesario usarla para fines de cualquier acción judicial por parte del Estado. 10 L.P.R.A. sec. 271(2).

El perjuicio a que está expuesto un abonado en estas circunstancias es a que la investigación en proceso revele alguna involucración de su parte en la comisión de infracciones a la legislación contra los monopolios. La invasión a la intimidad es mínima —no está envuelto aquí el derecho a la asociación, la secretividad de las comunicaciones y

papeles propios, la dignidad de su persona, la inviolabilidad de su morada sin orden judicial suficiente y derechos análogos— frente a la clara necesidad de acceso a información estrictamente limitada, como la que se requiere aquí, para el cumplido ejercicio del poder investigativo del Estado bajo la autoridad concedida por mandato expreso de ley.

Por las razones expuestas, bajo la Regla 50 de nuestro Reglamento, *se confirmará la sentencia recurrida. La Puerto Rico Telephone Co. deberá brindar la información requerida por la Oficina de Asuntos Monopolísticos.*

Los Jueces Asociados Señores Negrón García y Rebollo López concurren en el resultado sin opinión.