*400 Opinión concurrente emitida por el
Juez Asociado Señor Rivera Pérez.
Concurrimos con el resultado de la sentencia. Esto es, que la citación enviada por la Comisión de Bienestar Social de la Cámara de Representantes al Departamento de Jus-ticia es improcedente, ya que la Resolución de la Cámara de Representantes Núm. 2756 no delegó la encomienda a la Comisión. Compartimos el criterio de la mayoría a los efectos de que la citación cursada al Departamento de la Familia adolece de vicios en su notificación, que impiden su ejecución. No obstante, no compartimos algunos de los fundamentos esbozados por la mayoría. Por esta razón con-sideramos pertinente expresarnos por separado para des-tacar, plasmar y delinear unos aspectos medulares que la sentencia aborda escuetamente en su determinación y que, a nuestro juicio, merecen una atención más profunda.
En este caso, las actuaciones de la Rama Legislativa intervienen con un derecho fundamental protegido que tie-nen los padres de evitar que se divulguen incidencias o detalles relacionados a su vida familiar, la crianza de sus hijos, sus creencias y el estilo de vida. Debemos recordar que nuestra Constitución promueve y garantiza la toleran-cia y el respeto a la diversidad de estilos de vida dentro de una sociedad pluralista.
Reconocida la supremacía del derecho a la intimidad como uno de los derechos de la personalidad, de índole in-nato y privado, inherente a la persona,(1) cualquier intro-misión en la intimidad de la familia por parte del Estado, no puede subsistir si ésta no se sostiene sobre un interés *401 apremiante, y respetando las exigencias del debido proceso de ley.
El recurso plantea un conflicto entre el interés del Es-tado en obtener acceso a información pertinente a una in-vestigación y el derecho constitucional de unos individuos a su intimidad. Debemos examinar la dimensión y fuerza de ambos valores, según la situación específica del caso ante nos.
I
Los hechos, según elaborados en la sentencia, encuen-tran apoyo en el expediente del Tribunal, por lo que no hay necesidad de recrearlos. Así, pues, pasamos directamente a esbozar el orden normativo constitucional vigente, aplicable a la controversia planteada.
Los poderes y las facultades de la Rama Legislativa na-cen de las Secs. 1 y 17 del Art. Ill de la Constitución de Puerto Rico.(2) Estas disposiciones constitucionales repre-sentan sus fuentes nominales.(3)
La organización del sistema político puertorriqueño res-ponde a un sistema republicano de gobierno dividido en tres ramas o poderes,, a saber: Ejecutivo, Legislativo y Judicial. Está enmarcado en una democracia que reconoce los derechos fundamentales de sus ciudadanos.(4) Conforme a la organización democrática, corresponde a la Rama Legislativa el peso de la representación ciudadana.
Este Tribunal ha reconocido que entre las facultades y los deberes de la Rama Legislativa está fiscalizar la ejecu-ción de la política pública formulada por la Rama Ejecutiva y la conducta de los jefes de departamentos de esa rama de *402 gobierno.(5) El ejercicio del Poder Legislativo de una investigación depende(6) en gran medida de la facultad que tie-nen los cuerpos legislativos para citar testigos a compare-cer y suministrar los documentos pertinentes a las vistas convocadas por sus comisiones, según la delegación corres-pondiente del cuerpo.(7) Esta facultad de ordinario se ejerce a través de sus comisiones.(8) Sin embargo, el poder de éstas no es ilimitado, irrestricto ni absoluto. Su campo de acción está limitado, al igual que toda acción del Estado, por las disposiciones constitucionales sobre la separación de poderes(9) y la Carta de Derechos.(10) Infringida cual-quiera de las dos limitaciones mencionadas, los tribunales podrán intervenir para determinar las normas constitucio-nales mínimas que deben regir el funcionamiento de las comisiones legislativas.(11)
Ni los cuerpos y demás órganos legislativos ni los fun-cionarios ejecutivos pueden convertirse en jueces de sus propios poderes.(12) Así, pues, cuando la Rama Legislativa, en la consecución de su interés en obtener acceso a la in-formación pertinente a una investigación, interviene con el derecho a la intimidad en el contexto del ámbito familiar, debemos evaluar los contornos del Poder Legislativo de la investigación(13) para garantizar la debida protección de *403 los derechos constitucionales de los ciudadanos que po-drían resultar intervenidos por ella.
Al evaluar si una comisión legislativa se extralimitó en el ejercicio de su poder de investigación, hemos adoptado los criterios establecidos en la jurisdicción federal.(14) Al aplicar estos criterios, hemos resuelto que la investigación en cuestión debe cumplir con un propósito legislativo y con los postulados de la Constitución de Puerto Rico.(15) Así, pues, debemos inquirir sobre los extremos siguientes: (1) ¿es arbitrario el uso de ese poder en este caso?, (2) ¿se persigue un propósito legislativo?, (3) ¿conlleva la utiliza-ción de ese poder la invasión de alguna prerrogativa ciuda-dana consagrada en la Carta de Derechos?(16)
II
Cuando la Rama Legislativa, en el descargo de su facul-tad investigativa, interfiere con el derecho a la intimidad de un ciudadano en su carácter individual, el criterio que debe guiar la evaluación judicial del requerimiento de in-formación es la identificación de determinada intrusión en *404 la esfera de la intimidad, sobre la base de su razonabili-dad, legalidad y pertinencia.(17)
La razonabilidad de un requerimiento de información del Poder Legislativo de investigar dependerá de la concu-rrencia de las circunstancias siguientes: (1) que la investi-gación esté dentro de la autoridad conferida por la ley; (2) que el requerimiento no sea demasiado indefinido, y (3) que la información solicitada sea razonablemente perti-nente al asunto específico bajo investigación(18) La priva-cidad e intimidad del individuo ha de ser evaluada según el criterio de la expectativa razonable de intimidad.
La determinación de legalidad se hará a base de las consideraciones siguientes: (1) si el referido poder de inves-tigación ha sido ejercido arbitrariamente, (2) si la investi-gación persigue un propósito legislativo(19) y (3) si el ejer-cicio de ese poder invade alguna prerrogativa ciudadana consagrada en la Carta de Derechos, que lesione de alguna forma derechos individuales. (20)
Por otro lado, la determinación de pertinencia se hará tomando en consideración los factores siguientes: (1) el tipo de documento requerido; (2) la información que contiene o podría contener; (3) la posibilidad de perjuicio por cual-quier divulgación subsiguiente no consentida; (4) el daño que la divulgación pueda ocasionarle a la relación que ge-neró los documentos; (5) la adecuacidad de las medidas encaminadas a prevenir la divulgación no autorizada, y (6) el grado de necesidad del acceso a la información y el hecho de que si existe un mandato estatutario expreso, una polí- *405 tica pública articulada u otro interés público reconocible que milite a favor del acceso.(21)
No obstante, hemos sido enfáticos al resolver que a la hora de determinar la existencia de un interés personal e individual protegido frente a la intervención del Estado, el criterio rector será “si la persona tiene un derecho razona-ble a abrigar, donde sea, dentro de las circunstancias del caso específico, la expectativa de que su intimidad se respete”.(22) (Enfasis suplido.)
En lo que nos atañe, hemos resuelto que cuando los re-querimientos de información del Estado emitidos para ob-tener cierta documentación se dirigen a individuos que no son objeto de la investigación, el investigado estará cobi-jado por la protección constitucional cuando su información se encuentra en poder de ese tercero.(23) Por ejemplo, he-mos resuelto que las personas poseen un derecho a la inti-midad sobre la información que tengan las instituciones bancarias acerca de su vida privada, sus transacciones y sus negocios.(24) El fundamento tras ello es que esa infor-mación revela unos patrones y estilos de vida de cada uno de los clientes que utilizan los servicios de la institución bancaria, así como su situación económica.(25) Sostuvimos que mediante la obtención de esta documentación se puede divulgar información de naturaleza íntima del indi-viduo.(26) Así, pues, hemos resuelto que, según la protección que provee la Constitución de Puerto Rico a todo ciuda-dano contra intervenciones del Estado, ni las empresas ni *406 los bancos tienen que presumir que los ciudadanos al pro-veerle información están renunciando a su expectativa de intimidad sobre ésta.(27)
Según se desprende de los precedentes reseñados, cuando la información requerida está en poder de un ter-cero, la protección judicial ante la intervención del Estado se torna indispensable por imperativo constitucional del derecho a un debido proceso de ley. En esos casos se le encomienda a la autoridad judicial determinar y evaluar los asuntos sobre la privacidad que el requerimiento pueda suscitar. Como consecuencia, en aquellos casos en los que las instituciones gubernamentales tengan el poder de com-peler a personas naturales o jurídicas a suministrar infor-mación, sobre la cual terceros puedan abrigar un derecho a la intimidad, el ente gubernamental tiene a su haber dos mecanismos para obtener la información. En primer lugar, acudir directamente a los tribunales para obtener una or-den para requerir la entrega de la información solicitada. Aquí, el rol del tribunal será el de un interventor imparcial que velará porque la información solicitada cumpla con los requisitos de la autoridad legal, pertinencia y relación ra-zonable con el objeto de la investigación. Con ello se provee suficientes garantías contra la arbitrariedad del pedido de la Rama Legislativa.(28) En la alternativa, si la Legislatura decide emitir una citación a las agencias pertinentes para que le entreguen la información solicitada relacionada con la investigación, deberá notificarle formalmente con anti-cipación razonable al individuo afectado por dicho requeri-miento. La notificación deberá contener, entre otras cosas, *407 lo siguiente: la información específica y detallada, expre-sando la razón, el propósito y la pertinencia de la solicitud, a la luz de la investigación que se está llevando a cabo, y la disposición legal que faculta a la comisión legislativa en cuestión, para realizar tal requerimiento. El propósito de la notificación es dar una oportunidad razonable al ciuda-dano investigado, que se sienta agraviado en su derecho a la intimidad, de cuestionar el requerimiento de la informa-ción ante la autoridad judicial competente. (29)
Ambos mecanismos reseñados interponen al tribunal como ente neutral y adjudicador en la evaluación de la le-galidad, razonabilidad y pertinencia del requerimiento le-gislativo en protección del derecho a la intimidad de las personas.(30)
La See. 2 del Art. I de la Constitución de Puerto Rico(31) pretendió establecer un sistema de pesos y contrapesos, con el propósito de crear un equilibrio dinámico entre sus poderes coordinados y de igual rango para evitar que uno amplíe su autoridad a expensas de otro.(32) El loable propó-sito de la separación de poderes es evitar la concentración excesiva del poder en una sola rama de gobierno y salva-guardar la independencia de cada rama, evitando que una de ellas domine o interfiera con las facultades de las otras. (33)
*408 III
El derecho a la intimidad está garantizado por la Carta de Derechos de la Constitución de Puerto Rico, en sus Sees. 1, 8 y 10 del Art. II. En lo pertinente, la Sec. 1 de dicho cuerpo legal consagra el principio de la inviolabilidad de la dignidad del ser humano.(34) Por su parte, la See. 8 de dicha carta decreta el derecho que tiene toda persona a estar protegida contra los ataques abusivos a su honra, reputa-ción, vida privada y familiar;(35) la Sec. 10 protege al ciu-dadano contra registros, allanamientos e incautaciones irraz onables. (36)
Las mencionadas Secs. 1 y 8 del Art. II de nuestra Cons-titución operan sin necesidad de una ley que las implemented(37) Es decir, que tanto el derecho a la intimi-dad como a la inviolabilidad de la dignidad del ser humano operan ex propio vigore y pueden hacerse valer aún entre personas privadas.(38) De no ser así, la intimidad y la dig-nidad humana quedarían supeditadas a la acción legisla-tiva, lo que sería simplemente incongruente con el propó-sito de los foij adores de la Constitución y representaría una contramarcha en su evolución vindicadora.(39)
La amplitud de la See. 8 de la Carta de Derechos, supra, es de tal magnitud que protege la inviolabilidad personal en su forma más completa y amplia. Ello debido a que el honor y la intimidad son valores del individuo que merecen una protección cabal, no sólo frente a atentados provenien-tes de otros particulares, sino también contra ingerencias abusivas de las autoridades gubernamentales. La fórmula *409 se extiende a todo lo que es necesario para el desarrollo y lá expresión de la persona. (40)
La declaración constitucional de que la dignidad del ser humano es inviolable es la afirmación relativa al principio moral de la democracia. Es el principio de que el ser hu-mano y su dignidad constituyen la razón de ser de la justificación política. (41)
Las relaciones humanas y familiares que incluyen el matrimonio, el nacimiento, la crianza y la cohabitación de los hijos están contenidas dentro del concepto libertad, pro-tegido por la Constitución de Estados Unidos.(42) Además, la intromisión del Estado en el ámbito de las relaciones familiares está sujeta a la protección contra los ataques abusivos a la intimidad, según se consagra en el Art. II, Sec. 8 de la Constitución de Puerto Rico, supra. Así, pues, la intromisión del Estado en estas áreas sensitivas sólo puede tolerarse cuando así lo requieran factores superan-tes de alto interés público como la salud, la seguridad pú-blica o el derecho a la vida y la felicidad del ser humano afectado. (43)
*410 Al determinar la extensión de la intervención guberna-mental en las relaciones familiares, hemos resuelto lo si-guiente:
En la sociedad democrática organizada alrededor de los de-rechos fundamentales del hombre, el Estado ha de reducir a un mínimo su intervención con sensitivas urdimbres emocio-nales como lo son las relaciones de familia. La intromisión en la vida privada solo ha de tolerarse cuando así lo requieran factores superantes de salud y seguridad pública o el derecho a la vida y a la felicidad del ser humano afectado.(44)
El derecho y la protección de la vida privada y familiar, consustancial al derecho a la intimidad y al principio inviolable de la dignidad del ser humano, protege dos intereses fundamentales. Uno es el interés individual de evitar la divulgación de asuntos personales y el otro es el interés de poder tomar decisiones importantes de forma inde-pendiente.(45) Este derecho constitucional impone a toda persona el deber de no inmiscuirse en la vida privada o familiar de los demás seres humanos.(46) De ahí surge la dualidad de su carácter de derecho y de su protección tanto frente a las intervenciones del Estado como de personas particulares. (47)
En Roberts v. U.S. Jaycees, 468 U.S. 609, 618-620, 622 (1984), el Tribunal Supremo de Estados Unidos reconoció que la zona de la intimidad que cubre las relaciones fami-liares obedece y desempeña un rol cultural determinante, ya que propicia la transmisión de tradiciones y creencias entre las generaciones. El Estado debe ejercer suma cau-tela al intervenir en la esfera familiar, ya que es ahí donde los individuos desarrollan su identidad, la cual és un ele-mento esencial del concepto libertad.
*411 IV
El derecho a la intimidad del individuo, en algunas oca-siones, se extiende a los bienes, la propiedad y la morada de la persona, y en este entorno entra en juego la protec-ción contra los registros y allanamientos, instituida en la Enmienda 4 de la Constitución federal(48) y en el Art. II, Sec. 10 de su contraparte puertorriqueña.(49) Su propósito es proteger el derecho a la intimidad y dignidad del indivi-duo frente a actuaciones arbitrarias e irrazonables del Estado.(50) Este se extiende y ampara a los documentos y otras pertenencias del individuo e interpone la figura del juez entre los funcionarios públicos y la ciudadanía para ofrecer una mayor garantía de razonabilidad a la referida intrusión.(51)
La mera intervención del Estado con el individuo no ac-tiva automáticamente la protección. Para que ésta se active, es necesario que el individuo afectado por la interven-ción del Estado disfrute de una expectativa razonable de intimidad sobre el lugar u objeto allanado, registrado o incautado. Si el individuo no abriga una expectativa razo-nable de que su intimidad será respetada, no será acreedor a la protección constitucional.(52)
*412 V
En Aponte Martínez v. Lugo, 100 D.P.R. 282, 287 (1971),(53) expresamente indicamos que son efectivas en Puerto Rico, en lo aplicable, las garantías de la Primera Enmienda de la Constitución de Estados Unidos que están protegidas en los estados federados por la Enmienda 14 de dicha Constitución. U.S.C.A. Const., Amend. 1 y 14. Aña-dimos que ello lo hacíamos así por convicción propia, ya que sería ilusorio pensar que el Tribunal Supremo de Es-tados Unidos no insistiría en que se protegiesen en Puerto Rico los derechos constitucionales fundamentales de los ciudadanos de Estados Unidos.(54)
En nuestra jurisdicción, la See. 7, Art. II de la Constitu-ción de Puerto Rico consagra la Cláusula del Debido Pro-ceso de Ley. Ésta dispone que ninguna persona será pri-vada de su libertad o propiedad sin el debido proceso de ley.(55) Esta disposición constitucional tiene su contraparte y modelo en las Enmiendas 5 y 14 de la Constitución federal.(56) La Cláusula del Debido Proceso de Ley de la Constitución federal, en la cual se funda la nuestra, procura prevenir que el Gobierno abuse de sus poderes, que los utilice como instrumentos de opresión o que los ejerza de forma arbitraria en perjuicio del individuo.(57) Esta cláu-sula impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que, en esencia, sea justo y equitativo.(58)
Es preciso señalar que las normas constitucionales fede- *413 rales imponen las pautas y los requisitos de protección mí-nimos que se han de seguir. Consecuentemente, estados de la Unión y Puerto Rico pueden reconocer los derechos, estimados como fundamentales, con mayor amplitud que en la jurisdicción federal.(59) Estas interpretaciones no limitan nuestra facultad para reconocer mayor amplitud a las ga-rantías constitucionales conferidas por la Constitución de Puerto Rico.
El debido proceso de ley tiene dos dimensiones: la sus-tantiva y la procesal.(60) La acepción sustantiva persigue proteger los derechos fundamentales de la persona. Por su parte, la procesal le impone al Estado la obligación de ga-rantizar que la interferencia con los derechos de libertad y la propiedad de la persona sea a través de un procedimiento justo.(61)
El debido proceso de ley requiere, como regla general, la notificación o citación real y efectiva, ajustada a los precep-tos estatutarios aplicables.(62) Ello responde a uno de los principios constitucionales fundamentales del debido pro-ceso; a saber, que ninguna persona podrá ser privada de sus intereses libertarios o propietarios sin que previo a ello se lé conceda una oportunidad de ser oído en alguna forma o procedimiento que fuere justo y razonable.(63)
El asunto específico ante nuestra consideración requiere que examinemos con detenimiento los preceptos aplicables al ámbito procesal del debido proceso de ley. La aplicación de esta vertiente requiere la existencia de un interés individual de libertad o propiedad que el Estado afecte con su actuación. Cumplida esta condición, procede determinar *414 cuál es el procedimiento exigido para protegerlo; es decir, cuáles son las garantías mínimas para que la persona afec-tada tenga un debido procedimiento.(64) El criterio esencial que gobierna el procedimiento es que sea justo.
Hemos establecido cuál es el proceso debido al interve-nir con algún derecho protegido. Al hacer la evaluación de-ben sopesarse los criterios siguientes: (1) la naturaleza del interés individual afectado por la acción oficial; (2) el riesgo que podría conllevar en ese caso específico una de-terminación errónea que prive a la persona del interés pro-tegido mediante el proceso utilizado y el valor de las garan-tías adicionales o distintas, y (3) el interés gubernamental del Estado al afectar esos intereses y la posibilidad de uti-lizar métodos alternos.(65)
A pesar de que el derecho a la intimidad es inviolable, ya sea por el Estado o por una persona particular, su titular lo puede renunciar. Sin embargo, siendo un derecho constitucional de la más alta jerarquía, su renuncia tiene que ser patente, específica e inequívoca. (66)
VI
De nuestro historial jurisprudencial se deduce que en determinadas ocasiones, cuando se ha contrapuesto el de-recho a la intimidad a otros de similar jerarquía, en el balance de intereses, hemos favorecido éste.(67) Hemos sido enfáticos en que el Estado, incluyendo las comisiones legis-lativas, no puede restringir el derecho a la intimidad sin demostrar antes la existencia de un interés apremiante que lo justifique.
*415 En el caso de autos está involucrado uno de los valores más preciados de nuestra sociedad: el derecho a la intimidad. La familia y el hogar son dos ámbitos clara-mente protegidos por ese derecho. La intimidad y privaci-dad de la vida familiar de un individuo no pueden ser per-turbadas mediante una intromisión irrazonable del Estado, en ausencia de un interés apremiante. El Estado está obligado a asegurarle a todo ciudadano el pleno dis-frute del estilo y la composición familiar de su preferencia.
Concluimos, por lo tanto que la familia Elias Amigo, ob-jeto de la investigación de la Comisión de Bienestar Social de la Cámara de Representantes, tenía una expectativa razonable de intimidad sobre los documentos que obran en los expedientes, sobre el maltrato de los menores custodia-dos por el Departamento de la Familia y por el Departa-mento de Justicia. La expectativa razonable de intimidad, que cobija a toda persona, no desaparece ante la existencia de una ley o un cuerpo reglamentario que autorice su divulgación, sin protegerse las garantías constitucionales re-conocidas en nuestro ordenamiento jurídico.(68) Toda infor-mación recopilada en cumplimiento de una obligación impuesta por la ley —incluyendo documentación, exáme-nes, evaluaciones médicas, siquiátricas, sicológicas, entre otras, recopiladas por las agencias estatales— relacionada con menores de edad que sean objeto de investigación o intervención del Departamento de la Familia, el Departa-mento de Justicia y otras agencias, como parte de una in-vestigación al amparo de la Ley Núm. 177,(69) Ley para el Bienestar y Protección de Integral de la Niñez, tiene una utilidad y un propósito específico y limitado.(70) Razón por la cual ni los menores, sujetos a esta intervención o inves-tigación, ni sus padres renunciaron de forma alguna a su *416 expectativa de intimidad respecto a la información conte-nida en dichos expedientes.(71) La expectativa de intimidad sobre la información retenida es independiente a la auto-ridad del cuerpo legislativo para intervenir con ella como parte de su facultad investigativa.(72)
Por lo tanto, la Comisión de Bienestar Social de la Cá-mara de Representantes, previo a obtener cualquier docu-mento, expediente o información custodiada por el Depar-tamento de la Familia y el Departamento de Justicia, relacionada al caso del niño Mathew Elias Amigo, sus her-manos y demás partes implicadas, tiene la obligación de notificarle a éstos sus pretensiones con una antelación ra-zonable, para así brindarles la oportunidad de cuestionar dicho requerimiento ante la autoridad judicial competente, de sentirse agraviados. En la alternativa, pueden acudir al tribunal competente para obtener una autorización judicial que ordene la entrega de la información solicitada, una vez que dicho foro haya evaluado la legalidad, razonabili-dad y pertinencia del requerimiento. En cualquiera de las dos instancias, la notificación al ciudadano es un requisito indispensable.(73)
No surge del expediente que los padres del menor Mathew Elias Amigo fueran notificados de forma alguna sobre la intención ni el alcance de los requerimientos de la infor-mación, cursados por la Comisión de Bienestar Social de la Cámara de Representantes. Peor aún, el propio Tribunal de Apelaciones parece sugerir en su dictamen que, en au-sencia de un reclamo de confidencialidad por parte de la familia Elias Amigo, el derecho a la intimidad no se activa. ¿Acaso el derecho a la intimidad como a la inviolabilidad de la dignidad del ser humano no operan ex propio vigore? ¿No es acaso la expectativa de intimidad el criterio deter- *417 minante? ¿Acaso la renuncia al derecho a la intimidad no debe ser específica, inequívoca y patente? ¿Cómo iba a re-clamar la familia Elias Amigo la expectativa de intimidad que albergaban sobre la información solicitada si descono-cían que eran objeto de una pesquisa legislativa? ¿No es acaso el propósito de la notificación dar lá oportunidad a quien posee una expectativa de intimidad sobre cierta in-formación que se encuentra en manos de un tercero, el que puedan argumentar las defensas, las objeciones y los argu-mentos que estimen pertinentes? Contestamos dichas inte-rrogantes en la afirmativa.
En aras de salvaguardar el derecho a la intimidad de la familia Elias Amigo ante la investigación legislativa en su contra estimamos, además, que, como mínimo, la notifica-ción que en su día se le curse deberá informar la razón, el propósito y la pertinencia de la solicitud, a la luz de la investigación que se está llevando a cabo y la disposición legal que faculta a la comisión legislativa en cuestión, para realizar tal requerimiento.(74) Esto es imprescindible por imperativo del derecho constitucional a un debido proceso de ley. No podemos pretender que el propósito y la legali-dad de la investigación legislativa, así como la pertinencia, la materialidad y la razonabilidad de la información solici-tada, se deduzcan de la información requerida.
Ni la Resolución de la Cámara de Representantes Núm. 2756 ni otra disposición legal pertinente, ofrece procedi-miento alguno que pueda ser utilizado para determinar la pertinencia y razonabilidad del requerimiento, ni velar porque éste no sea arbitrario.(75) Razón por la cual la inter-vención judicial era imperiosa. Recordemos que las normas constitucionales o reglamentarias van dirigidas a proteger la intimidad de la persona. Así, para armonizar el derecho a la intimidad que tiene todo individuo, con el fundamental interés del Estado de poner en vigor las leyes, se le enco- *418 mienda a la autoridad judicial determinar cuándo puede el Estado intervenir legítimamente con el ámbito de intimi-dad del individuo.(76)
En ausencia de una determinación judicial sobre la ra-zonabilidad, legalidad y pertinencia de la citación o de una razonable y oportuna notificación a los padres de los me-nores sobre la investigación que se pretende llevar a cabo, es forzoso concluir que la citación cursada al Departa-mento de la Familia adolece de un vicio constitucional que impide su ejecución.
En cuanto a la citación cursada al Departamento de Justicia, como bien concluye la sentencia, no procede por no estar ceñida al texto de la Resolución de la Cámara de Representantes Núm. 2756.(77) La Mayoría fundamenta su decisión en que la Resolución de la Cámara de Represen-tantes Núm. 2756 adolece de especificidad.
Existe aquí la posibilidad de perjuicio indebido e irrazo-nable por una divulgación de información no consentida.(78) Aquí está implicada la dignidad e inviolabilidad de unos menores que están atravesando una azarosa trayectoria personal y familiar. Fueron removidos de la custodia de sus padres biológicos, sufrieron el deceso de dos de sus her-manos y se han visto forzados a múltiples ajustes físicos y emocionales a tan corta edad. Estos y otros detalles e inci-dencias relacionados a su situación personal y familiar no deben agravarse, exponiéndolos irrazonable e indebida-mente a un escrutinio público todavía mayor al que ya se *419 han visto sometidos, mediante la divulgación de la infor-mación confidencial incluida en sus expedientes. La razo-nabilidad de la intervención legislativa dependerá del balance entre el interés público de obtener información pertinente que le permita al Estado anticipar y evitar si-tuaciones de maltrato de menores y el derecho de la familia Elias Amigo a su intimidad e integridad, libre de interfe-rencias indebidas por parte del Estado.(79)
Este caso pone de manifiesto la necesidad de que los tribunales intervengan para proteger y salvaguardar la tranquilidad de un hogar(80) y para proteger a un ciuda-dano de sufrir la divulgación de la información que pueda constituir una intromisión irrazonable e indebida en su vida familiar.(81) Debemos garantizar que la Asamblea Le-gislativa, en el descargo de su poder constitucional, no uti-lice sus prerrogativas en forma inapropiada e irrazonable sobre el ciudadano ni que sea juez y parte de sus faculta-des, en su ejercicio sobre el individuo.(82)
El fin de la Constitución de Puerto Rico es la conviven-cia social con respeto y justicia para todos(83) y el de noso-tros, como su intérprete máximo, es asegurar la consecu-ción de sus fines. Su vitalidad descansa en su dina-mismo.(84) Nuestra decisión es compatible con las garantías que un Estado democrático debe a sus ciudadanos.(85) De este modo atemperamos nuestra Constitución a la realidad de los cambios sociales a los que se supone que sirva.

 P.R. Tel. Co. v. Martínez, 114 D.P.R. 328, 339 (1983); J. Castán Tobeñas, Derecho Civil español, común y foral, 11ma ed., Madrid, Ed. Reus, 1971, T. I, Vol. II, pág. 325.

 Art. Ill, Secs. 1 y 17, Const. E.L.A., L.P.R.A., Tomo 1.

 Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576, 590 (1983).

 P. Malavet Vega, Derechos y libertades constitucionales en Puerto Rico, Ponce, Ed. Lorena, 2003, pág. 41.

 Hernández Agosto v. Romero Barceló, 112 D.P.R. 407, 428 (1982).

 En Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576, 590 (1983), resolvimos que “la facultad de investigar es parte inseparable de la de legislar". (Énfasis suplido.)

 Hernández Agosto v. Betancourt, 118 D.P.R. 79, 84 (1986).

 Silva v. Hernández Agosto, 118 D.P.R. 45, 66 (1986). Véase, además, 2 Diario de Sesiones de la Convención Constituyente 854 (1951).

 Kilbourn v. Thompson, 103 U.S. 168 (1880); Tenney v. Brandhove, 341 U.S. 367 (1951); Barenblatt v. United States, 360 U.S. 109 (1959). Véase, además, Acevedo Vilá v. Meléndez, 164 D.P.R. 875 (2005).

 McGrain v. Daugherty, 273 U.S. 135 (1927); Tenney v. Brandhove, 341 U.S. 367 (1951).

 Silva v. Hernández Agosto, 118 D.P.R. 45, 57 (1986). Véase, además, Peña Clos v. Cartagena Ortiz, supra; Rullán v. Fas Alzamora, 166 D.P.R. 742 (2006).

 Peña Clos v. Cartagena Ortiz, supra, pág. 591.

 Santa Aponte v. Srio. del Senado, 105 D.P.R. 750, 759 (1977).

 La primera decisión que impuso ciertos límites al poder de investigación de la Rama Legislativa, específicamente al Congreso de Estados Unidos, fue el caso de Kilbourn v. Thompson, supra, donde se exigió, en el contexto de la investigación a un ciudadano privado, que ésta debe responder a propósitos legislativos definidos. Más tarde, en Marshall v. Gordon, 243 U.S. 521 (1917), se delimitó un poco más el poder de la investigación a los efectos de que no debe interferir con la Carta de Derechos. Ese caso, además, reafirmó la antigua práctica judicial de no sujetar la autoridad legislativa de investigación a la intervención de los tribunales.
Ahora bien, no fue hasta el caso McGrain v. Daugherty, supra, que el Tribunal Supremo de Estados Unidos definió los contornos del poder de investigación legisla-tiva cuando ésta se centraba en la Rama Ejecutiva o en la conducta de alguno de los jefes de sus departamentos. El Alto Foro federal rechazó la contención del Gobierno de Estados Unidos de que en tal situación la Comisión carecía del poder para obligar a un miembro del gabinete a comparecer y testificar ante ella.
Finalmente en Tenney v. Brandhove, supra, se limitó severamente la regla de que las investigaciones legislativas tienen que cumplir un propósito legislativo.

 Rullán v. Fas Alzamora, supra. Véanse, además: Peña Clos v. Cartagena Ortiz, supra; Santa Aponte v. Srio. del Senado, 105 D.P.R. 750 (1977); Banco Popular, Liquidador v. Corte, 63 D.RR. 66 (1944).

 Peña Clos v. Cartagena Ortiz, supra, págs. 591-592.

 Véase Rullán v. Fas Alzamora, supra.

 Véanse: H.M.C.A. (P.R.), Inc., etc. v. Contralor, 133 D.P.R. 945, 970 (1993); E.L.A. v. P.R. Tel. Co., 114 D.P.R. 394, 402 (1983); P.N.P. v. Tribunal Electoral, 104 D.P.R. 741, 747-748 (1976); Comisionado de Seguros v. Bradley, 98 D.P.R. 21, 31 (1969).

 Rullán v. Fas Alzamora, supra; Peña Clos v. Cartagena, supra, pág. 591.

 Íd.

 E.L.A. v. P.R. Tel. Co., supra, pág. 402. Véanse: United States v. Westinghouse Elec. Corp., 638 F.2d 570, 578 (3er Cir. 1980); Whalen v. Roe, 429 U.S. 589 (1977).

 Pueblo v. Lebrón, 108 D.P.R. 324, 331 (1979). Véanse, además: E.L.A. v. P.R. Tel. Co., 114 D.P.R. 394, 402 (1983); Pueblo v. Loubriel, Suazo, 158 D.P.R. 371, 378 (2003).

 RDT Const. Corp. v. Contralor I, 141 D.P.R. 424 (1996).

 Rullán v. Fas Alzamora, supra; RDT Const. Corp. v. Contralor I, supra.

 Rullán v. Fas Alzamora, supra.

 Id.

 Id.; R.D.T. Const. Corp. v. Contralor I, supra, pág. 443.

 En Silva v. Hernández Agosto, supra, pág. 57, resolvimos que los tribunales pueden intervenir para determinar las normas constitucionales mínimas que deben regir el funcionamiento de las comisiones legislativas. Añadimos, además, que la determinación final de una controversia sobre la validez constitucional de una regla de una comisión legislativa corresponde a los tribunales, sin que ello constituya una intromisión indebida de la Rama Judicial en los trabajos de la Asamblea Legislativa.

 Rullán v. Fas Alzamora, supra.

 Íd.

 El Art. I, Sec. 2 de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, ed. 2008, pág. 271, dispone lo siguiente:
“El gobierno del Estado Libre Asociado de Puerto Rico tendrá forma republicana y sus Poderes Legislativo, Ejecutivo y Judicial, según se establecen por ésta Consti-tución, estarán igualmente subordinados a la soberanía del pueblo de Puerto Rico.”

 Nogueras v. Hernández Colón, 127 D.P.R. 405, 412 (1990).

 Colón Cortés v. Pesquera, 150 D.P.R. 724, 750 (2000).

 Art. II, Sec. 1, Const. E.L.A., L.P.R.A., Tomo 1.

 Art. II, Sec. 8, Const. E.L.A., L.P.R.A., Tomo 1.

 Art. II, Sec. 10, Const. E.L.A., L.P.R.A., Tomo 1.

 Alberio Quiñones v. E.L.A., 90 D.P.R. 812, 816, (1964); E.L.A. v. Hermandad de Empleados, 104 D.P.R. 436 (1975).

 P.R. Tel. Co. v. Martinez, supra, pág. 339; Arroyo v. Rattan Specialties, Inc., 117 D.P.R. 35, 64 (1986).

 P.R. Tel. Co. v. Martinez, supra, pág. 340.

 Véase el Informe de la Comisión de la Carta de Derechos rendido.a la Convención Constituyente, 4 Diario de Sesiones 2566-2567 (1951).

 2 Diario de Sesiones 1372 (1951).

 Roberts v. United States Jaycees, 468 U.S. 609, 619-620 (1984). El Tribunal Supremo de Estados Unidos resolvió, en lo pertinente, lo siguiente:
“The personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family —marriage, e.g., Zablocki v. Redhail, [434 U.S. 678 (1978)]; childbirth, e.g., Carey v. Population Services International, [431 U.S. 678 (1977)]; the raising and education of children, e.g., Smith v. Organization of Foster Families, [431 U.S. 816 (1977)]; and cohabitation with one’s relatives, e.g., Moore v. East Cleveland, [431 U.S. 494 (1977)]. Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one’s life. Among other things, therefore, they are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship.”

 Garcia Santiago v. Acosta, 104 D.P.R. 321, 324 (1975). Véase, ádemás, Figueroa Ferrer v. E.L.A., 107 D.P.R. 250 (1976).

 García Santiago v. Acosta, 104 D.P.R. 321, 324 (1975).

 Whalen v. Roe, supra, págs. 599-600.

 Colón v. Romero Barceló, 112 D.P.R. 573, 576 (1982); Figueroa Ferrer v. E.L.A., supra; E.L.A. v. Hermandad de Empleados, supra.

 Arroyo v. Rattan Specialties, Inc., supra, pág. 75, opinión concurrente y disidente del Juez Asociado Señor Hernández Denton.

 La Cuarta Enmienda de la Constitución de Estados Unidos dispone lo si-guiente:
“The right of people to be secure in the persons, houses, papers, and effects against unreasonable searches and seizures, shall no be violated, and no Warrants shall be issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” U.S.C.A. Const., Amend 4.

 Art. II, Sec. 10, Const. E.L.A., L.P.R.A., Tomo 1.

 Pueblo v. Loubriel, Suazo, supra, pág. 378. Véanse: Pueblo v. Yip Berrios, 142 D.P.R. 386 (1997); Pueblo v. Ramos Santos, 132 D.P.R. 363 (1992).

 E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197, 207 (1998).

 Rullán v. Fas Alzamorra, supra.

 Véase R.C.A. v. Gobierno dé la Capital, 91 D.P.R. 416, 427 (1964).

 Aponte Martínez v. Lugo, 100 D.P.R. 282, 287 (1971).

 Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1.

 Rodríguez Rodríguez v. E.L.A., 130 D.P.R. 562, 575 (1992); Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 273 (1987).

 Rodríguez Rodríguez v. E.L.A., supra, pág. 575. Véanse, además: Davidson v. Cannon, 474 U.S. 344, 348 (1986); Daniels v. Williams, 474 U.S. 327, 331 (1986).

 Rodríguez Rodríguez v. E.L.A., supra, pág. 578.

 Pueblo v. Muñoz, Colony Ocasio, 131 D.P.R. 965, 982 (1992); Pueblo v. Dolce, 105 D.P.R. 422 (1976); Cooper v. California, 386 U.S. 58 (1967).

 Rodríguez Rodríguez v. E.L.A., 130 D.P.R. 562, 575 (1992). Véase Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1984).

 Rexach v. Ramírez, 162 D.P.R. 130 (2004); Rodríguez Rodríguez v. E.L.A., supra, pág. 576.

 Asoc. Residentes v. Montebello Dev. Corp., 138 D.P.R. 412, 421, (1995).

 J.R.T. v. Hato Rey Psychiatric Hosp., 119 D.P.R. 62, 70 (1987).

 Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 274-275 (1987).

 Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 888-889 (1993).

 P.R. Tel. Co. v. Martínez, supra, pág. 343.

 Id., pág. 339. Así, por ejemplo, el derecho a la intimidad ha prevalecido ante los derechos fundamentales siguientes: libre expresión frente a la residencia del Secretario del Trabajo; libertad de culto, y propiedad.

 Véase Rullán v. Fas Alzamora, supra.

 Art. 27 de la Ley Núm. 177 de 1 de agosto de 2003, según enmendada, conocida como la Ley para el Bienestar y Protección de Integral de la Niñez, 8 L.P.R.A. sec. 446(f).

 Véase Rullán v. Fas Alzamora, supra.

 No se dan los requisitos de la renuncia al derecho a la intimidad, a saber, que ésta sea patente específica e inequívoca.

 Nixon v. Administrator General Services, 433 U.S. 425, 458 (1977). (“The expectation is independent of the ownership of the materials”.)

 Rullán v. Fas Alzamora, supra.

 Rullán v. Fas Alzamora, supra.

 íd.

 Pueblo v. Muñoz, Colón y Ocasio, supra.

 En Hernández Agosto v. Betancourt, 118 D.P.R. 79, 84-85 (1986), resolvimos que las comisiones sólo pueden dedicarse a investigar aquello que se les asigne me-diante una resolución debidamente autorizada. Véanse, además: Watkins v. United States, 354 U.S. 178 (1975); Sinclair v. United States, 279 U.S. 263 (1929); Kilbourn v. Thompson, supra.

 Cabe señalar que entre los documentos solicitados al Departamento de la Familia por la Comisión de Bienestar Social estaban los siguientes: los documentos personales y confidenciales de los menores, sus análisis psicológicos, los informes administrativos relacionados a las intervenciones del Estado, sus expedientes esco-lares y sus informes médicos, entre otra documentación.

 Pueblo en interés menor N.R.O., 136 D.P.R. 949, 964 (1994).

 Véanse: Sucn. de Victoria v. Iglesia Pentecostal, 102 D.P.R. 20 (1974); E.L.A. v. Hermandad de Empleados, supra.

 Colón v. Romero Barceló, supra.

 Rullán v. Fas Alzamora, supra.

 P.R. Tel. Co. v. Martínez, supra, pág. 350.

 Íd.

 Íd.