ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI-DJ2024-062C

| | | |
|---|---|---|
| **LOS MAS SUELTOS INC., JOEL MUÑOZ MARTÍNEZ, RANDY ORTIZ ACEVEDO**<br><br>Recurridos<br><br><br>v.<br><br><br>**ÁNGELA VEGA TORRES, ÁNGELA R. VEGA TORRES su esposo y la Sociedad Legal de Gananciales compuesta por ambos, QUALITY ACCOUNTING SERVICES PR CORP.**<br><br>Peticionarios | TA2025CE00167 | ***CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de **Rio Grande**<br><br>Caso Núm.:<br>**CA2025CV00907**<br><br>Sobre:<br>Ley de Corporaciones Daños, Incumplimiento de Contrato |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 15 de agosto de 2025.

Comparece ante nos Quality Accounting Services PR Corp. (Quality Accounting), la señora Ángela R. Vega Torres (Sra. Vega Torres), su esposo y la Sociedad Legal de Bienes Gananciales, compuesta por ambos, (parte peticionaria) mediante un recurso de *certiorari* en el que solicitan que revoquemos una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Río Grande, (TPI)

el 30 de junio de 2025.[1] Por medio de dicho dictamen, el foro primario declaró No Ha Lugar las solicitudes de desestimación radicadas por la parte peticionaria.[2]

A pesar de haberle concedido un término para radicar su alegato en oposición al recurso, el señor Joel A. Muñoz Martínez (Sr. Muñoz Martínez) y el señor Randy Ortiz Acevedo (Sr. Ortiz Acevedo), por sí y en representación de Los Más Sueltos, Inc., (en conjunto, parte recurrida) no radicaron el mismo.

Por lo fundamentos que pormenorizamos a continuación, denegamos expedir el recurso de *certiorari*.

## I.

El caso de marras tiene su génesis el 24 de marzo de 2025 cuando la parte recurrida presentó una *Demanda* en concepto de daños y perjuicios, e incumplimiento de contrato.[3]

Adujo que, desde antes del año 2009, la Sra. Vega Torres fungió como contable del Sr. Muñoz Martínez y del Sr. Ortiz Acevedo, en su carácter personal. La parte recurrida sostuvo que, para el 2009, la Sra. Vega Torres los orientó a ambos para la incorporación de la compañía Los Más Sueltos, Inc., y que, ante dicha incorporación, la Sra. Vega Torres fue designada como contable y

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada Núm. 31. Notificada y archivada en autos el 3 de julio de 2025.
[2] Entradas Núms. 11-12 en SUMAC.
[3] Entrada Núm. 1.

*controller* de la entidad. Expuso que la parte peticionaria poseyó control completo de las cuentas y del dinero de la empresa, y que la Sra. Vega Torres ostentó control total de la información necesaria para entrar a diferentes plataformas bancarias y contributivas como SURI. A cambio de los servicios de la Sra. Vega Torres, la parte recurrida adujo que ella recibió un salario mensual de $520.00 y una tarifa fija de $450.00 por cada presentación en vivo que tuvieran "Jowell y Randy" para una cantidad de alrededor de $50,900.00. Expuso que la Sra. Vega Torres debitó dichos pagos, por sí o a través de Quality Accounting, de las cuentas de Los Más Sueltos, Inc. Además, planteó que, luego del año 2020, la carrera del Sr. Muñoz Martínez y del Sr. Ortiz Acevedo alcanzó un repunte significativo por lo que aumentó la demanda de solicitudes para las presentaciones en vivo, y, por consecuencia, incrementaron los ingresos de Los Más Sueltos, Inc.

La parte recurrida arguyó que, para el 10 de agosto de 2023, comenzó a solicitarle a la Sra. Vega Torres, mediante correos electrónicos, el desglose de ingresos y gastos correspondientes a las actividades de los *proms* del 2023, y otros depósitos relacionados al *booking*. Expuso dicha parte que la Sra. Vega Torres respondió, a través de correo electrónico que, "*les fallé no entregando el cuadre a tiempo y no pude ni completarlo rápido por las dudas que surgen y tenía que preparar reportes más concisos y diferentes a lo que tengo*

*en la contabilidad y **solo yo podía realizar estos cuadres***".[4] La parte recurrida adujo que, luego de múltiples intentos, la Sra. Vega Torres no entregó los informes de contabilidad solicitados ni se reunió con la parte recurrida en el año 2023. Expuso que no tuvo otra opción que recuperar las cuentas de bancos con el propósito de conocer los detalles acerca de los depósitos y las transacciones.

Expresó la parte recurrida que, después de varios intentos, la Sra. Vega Torres concedió una reunión el 26 de marzo de 2024, pero no entregó los informes de contabilidad ni los desgloses de los ingresos y los gastos de los *proms* y los *bookings*. En cambio, sostuvo que, la Sra. Vega Torres, se limitó a entregar unos cartapacios con información incompleta. De igual modo, alegó que, para dicha fecha, la parte recurrida se enteró que la Sra. Vega Torres no había radicado las planillas de Los Más Sueltos, Inc. para los años 2019 y 2021 al 2023.

La parte recurrida enunció que, ante la negativa de la parte peticionaria en proveer la documentación indispensable sobre la operación y el estatus financiero de la empresa, el Sr. Muñoz Martínez y el Sr. Ortiz Acevedo tuvieron que tomar las riendas de la contabilidad de Los Más Sueltos, Inc. Lo anterior, con el fin de adquirir conocimiento de la extensión de las obligaciones y los asuntos financieros de la empresa, y para tomar medidas urgentes

---

[4] *Íd.* (Énfasis suplido en el original).

en protección de la misma y sus activos. Además, la parte recurrida expresó que tuvo que reconstruir la contabilidad y las finanzas de Los Más Sueltos, Inc. y que, en este proceso de reconstrucción, descubrió que la parte peticionaria incumplió en mantener y entregarle a la nueva administración de la entidad los formularios 480, según requiere el *"Código de Rentas Internas de Puerto Rico de 2011"* (Código de Rentas Internas), Ley Núm. 1 del 31 de enero de 2011, según enmendada, 13 LPRA secs. 30011 *et seq.*; información sobre las personas y las empresas a quienes la parte peticionaria les efectuó pagos compensatorios; información sobre las retenciones correspondientes que debieron hacerse y los relevos brindados; al igual que los registros de Recursos Humanos con los trimestrales del Departamento de Hacienda, IRS, FICA, FUTA y el Departamento del Trabajo. Además, la parte recurrida expuso que corroboró atraso en la contabilidad, falta de reconciliación en diversos periodos, y que no existía récord de las retenciones ni de los pagos realizados por años. Tampoco se había remitido al Departamento de Hacienda pagos mensuales retenidos por el 10% que exige el Código de Rentas Internas, *supra*.

La parte recurrida sostuvo que las omisiones y la dejadez de la parte peticionaria en el mantenimiento de registros fiscales y en la retención de partidas exigidas por ley, expuso a la parte recurrida a multas, recargos y penalidades. Además, obligó a la nueva

gerencia a incurrir de forma apresurada en gastos cuantiosos para recomponer lo acontecido durante la administración de la parte peticionaria. Arguyó que los actos de la parte peticionaria también afectaron la carrera del Sr. Muñoz Martínez y del Sr. Ortiz Acevedo como artistas e intérpretes, menoscabando sus ganancias por el desvío de los recursos y la falta de constatación de gastos y desembolsos.

En fin, la parte recurrida suplicó del TPI una cuantía no menor de $750,000.00 en concepto de indemnización, más costas, intereses y honorarios de abogados. Específicamente, solicitó una suma no menor de $300,000.00 por daños económicos y pérdidas cuantiosas a causa de la imprudencia, malicia, deslealtad y en violación a los deberes fiduciarios de la parte peticionaria; una cantidad no menor de $300,000.00 en concepto de daños causados por la falta de información relevante y la destrucción de evidencia incluyendo récords electrónicos corporativos cuantiosos; al igual que una suma no menor de $150,000.00 por los daños morales y angustias mentales que causó la parte peticionaria mediante sus actuaciones temerarias y en perjuicio de ambos artistas.

Luego de múltiples trámites procesales, el 13 de mayo de 2025, Quality Accounting radicó una solicitud de desestimación por dejar de exponer una reclamación que justificara la concesión de un remedio, al amparo de las Regla 10.2(5) de Procedimiento Civil, 32

LPRA Ap. V, R. 10.2(5).[5] Quality Accounting adujo que la parte recurrida falló en exponer el daño sufrido a causa de las actuaciones alegadas ni estableció un nexo causal entre estas y los daños sufridos. Por último, expuso que la parte recurrida carecía de legitimación activa, conforme la Regla 15.1 de Procedimiento Civil, *supra*, R. 15.1, para llevar a cabo el caso, ya que faltaba un daño claro y palpable que impedía que se le pudiese brindar a la parte recurrida la concesión de un remedio.

Por su parte, el 13 de mayo de 2025, la Sra. Vega Torres, su esposo y la Sociedad Legal de Bienes Gananciales, compuesta por ambos, radicaron una solicitud de desestimación, conforme a las Reglas 10.2(5) y 15.1 de Procedimiento Civil, *supra*.[6] Sostuvieron que la Sra. Vega Torres no respondía en su carácter personal por servicios brindados a través de Quality Accounting, propósito por el cual fue formada. Además, expusieron que la parte recurrida no presentó prueba acreditativa de que la Sra. Vega Torres fue directora, tesorera ni *controller* de Los Más Sueltos, Inc. por lo que no existía un deber de fiducia para con la entidad; y que la Sra. Vega Torres estuvo disponible y lista para entregar los documentos en cualquier momento.

---

[5] Entrada Núm. 11 en SUMAC.
[6] Entrada Núm. 12 en SUMAC.

El 27 de mayo de 2025, la parte recurrida radicó una oposición a las solicitudes de desestimación.[7] Alegó que la parte peticionaria cobró salarios por años, debilitando la cuenta de la parte recurrida por servicios que no rindió, y que fue negligente en los asuntos de contabilidad que le fueron encomendado. Reiteró que la parte peticionaria ejercía control absoluto sobre las cuentas bancarias, plataformas fiscales, y los registros financieros de la parte recurrida. La parte recurrida acompañó a la oposición copias del portal del Departamento de Estado de donde surgía que la dirección física y postal de la corporación Los Más Sueltos, Inc. pertenecía a la parte peticionaria, y constituía el lugar en el que la parte peticionaria operaba su negocio de contabilidad; a saber, Bo. Carola, Carr 3 Edificio La Victoria oficina 201, en Río Grande, PR, 00745. También expuso que, conforme a una de estas copias del portal, se desprendía que Quality Accounting fue incorporada en el año 2015; es decir, más de cinco (5) años luego de la relación que se creó entre la parte recurrida y la Sra. Vega Torres.

La parte recurrida también arguyó que cumplió con el requisito de especificidad de la Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2, al igual que con la Regla 15.1 de Procedimiento Civil, *supra*. Alegó que el Sr. Muñoz Martínez y el Sr. Ortiz Acevedo sufrieron daños reales y palpables como la pérdida de dinero-por

---

[7] Entrada Núm. 16 en SUMAC.

ingresos no recibidos, fondos retenidos indebidamente y gastos imprevistos para recomponer la contabilidad-, así como daños a su crédito contributivo y reputación personal, y angustias mentales significativas. Expuso que existía un claro nexo causal entre las actuaciones u omisiones imputadas a la parte peticionaria, y los perjuicios descritos. Específicamente, planteó que la falta de radicación de planillas y de los pagos por parte de la Sra. Vega Torres o Quality Accounting generó directamente la posible imposición de multas y recargos contra la empresa de la parte recurrida. Expresó que la negativa de la Sra. Vega Torres a entregar documentos esenciales ocasionó que la parte recurrida incurriera en gastos para reconstruir información, y les impidió conocer y reclamar dinero que le correspondía a tiempo. Asimismo, adujo que el desmanejo de fondos y la ocultación de ingresos privaron al Sr. Muñoz Martínez y al Sr. Ortiz Acevedo de ganancias en sus carreras artísticas, lesionando sus intereses económicos inmediatamente.

El 3 de junio de 2025, la parte peticionaria presentó una réplica.[8] Indicó que Quality Accunting fue la única que proveyó los servicios de contabilidad. Además, adujo que no se cumplieron con los requisitos para levantar el velo corporativo para que respondiera la Sra. Vega Torres en su carácter personal, y que las alegaciones de la demanda no constituyeron los elementos necesarios para incoar

---

[8] Entrada Núm. 20 en SUMAC.

una causa de acción al amparo de las Reglas 10.2 y 15.1 de Procedimiento Civil, *supra*.

Subsiguientemente, el 23 de junio de 2025, la parte recurrida radicó una dúplica.[9] Adujo que era un axioma básico de nuestro ordenamiento jurídico que las alegaciones en la demanda tenían el propósito de bosquejar la controversia a grandes rasgos con el propósito de notificarle a la parte demandada de la reclamación que se aducía en su contra. Además, arguyó que, en la etapa inicial del caso, la parte promovente no tenía que exponer con detalle todos los hechos en que se fundamentaban su reclamación, sino que era suficiente con incorporar a la demanda alegaciones cortas, claras, simples, concisas y directas.

Asimismo, la parte recurrida sostuvo que la Sra. Vega Torres fue la única en poder realizar los cuadres y en fungir como oficial, empleada o profesional de Quality Accounting. La parte recurrida expresó que, desde el año 2009, cuando se creó Los Más Sueltos, Inc., depositó su confianza en la Sra. Vega Torres y que esta mantuvo control completo de las cuentas y de la información requerida para acceder a distintas plataformas. Expuso que desde el 2006 y previo a la creación de Quality Accounting en el año 2015, la Sra. Vega Torres brindó servicios de contabilidad a la parte recurrida, y que la incorporación de esta última entidad no alteró la

---

[9] Entrada Núm. 24 en SUMAC.

realidad de que ella continuara ejecutando todas las gestiones personalmente. Por ende, la parte recurrida arguyó que las alegaciones implicaban a la Sra. Vega Torres, en su carácter personal y profesional, valiéndose de una corporación. Adujo también que, como consecuencia directa de las omisiones de la Sra. Vega Torres, la parte recurrida quedó expuesta a penalidades severas. Como ejemplo, expuso que el *booking manager* de Los Más Sueltos, Inc., el señor Marc Gavela, fue obligado a pagar $20,000.00 al Departamento de Hacienda cuando se descubrió que la Sra. Vega Torres retuvo y no remitió las contribuciones correspondientes.

El 30 de junio de 2025, el foro primario emitió una *Orden* en la que denegó las peticiones de desestimación presentadas por la parte peticionaria. Además, ordenó a la parte peticionaria a contestar la demanda dentro de veinte (20) días.

Inconforme, el 18 de julio de 2025, la parte peticionaria presentó un recurso de *certiorari* ante nos y planteó los siguientes señalamientos de error:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA "MOCIÓN DE DESESTIMACIÓN POR DEJAR DE EXPONER UNA RECLAMACIÓN QUE JUSTIFIQUE LA CONCESIÓN DE UN REMEDIO A FAVOR DE QUALITY ACCUNTING SERVICES PR CORP.".**

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA "MOCIÓN DE DESESTIMACIÓN POR DEJAR DE EXPONER UNA RECLAMACIÓN QUE JUSTIFIQUE LA CONCESIÓN**

**DE UN REMEDIO A FAVOR DE [Á]NGELA VEGA TORRES".**

A pesar de haberle concedido un término para presentar su alegato en oposición al recurso, la parte recurrida no radicó el mismo.

## II.

## A.

El auto de *certiorari* es el vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones interlocutorias realizadas por un foro inferior. La expedición del auto descansa en la sana discreción del Tribunal. *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); *800 Ponce de León, Corp. v. American International Insurance Company of Puerto Rico*, 205 DPR 163, 174-175 (2020). En los casos civiles, la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, delimita las instancias en las que procede que el Tribunal de Apelaciones expida el recurso de *certiorari. Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, *supra*, pág. 1004; *Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 486-487 (2019). La citada regla establece que el recurso sólo se expide cuando se recurre de una orden o resolución interlocutoria bajo remedios provisionales de la Regla 56 de Procedimiento Civil, *supra*, R. 56; *injunctions* de la Regla 57 de Procedimiento Civil, *supra*, R. 57; o de

la denegatoria de una moción de carácter dispositivo. Por excepción, y en el ejercicio discrecional del foro apelativo, se puede expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, *supra.*; véase además, *Scotiabank de Puerto Rico v. ZAF Corporation, supra*, pág. 487. Según lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Además de la antedicha regla, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025), instituye los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*; estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ello impone al Tribunal de Apelaciones la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. Por tanto, de no estar presente ninguno de los criterios esbozados, procede que este foro superior se abstenga de expedir el auto solicitado. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008).

Asimismo, nuestro Tribunal Supremo de Puerto Rico ha establecido que "la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735-736 (2018). Por ende, el Tribunal de Apelaciones no interviene "con determinaciones emitidas por el foro primario y sustitu[ye] el criterio utilizado por éste en el ejercicio de

su discreción, salvo que se pruebe que actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto". *Citibank et al. v. ACBI et al., supra*, pág. 736 (Énfasis en el original eliminado); véase, además, *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012).

**B.**

Bajo nuestro ordenamiento jurídico, una persona puede solicitar la desestimación de una demanda presentada en su contra "cuando surja de las alegaciones de la demanda que alguna defensa afirmativa derrotará la pretensión del demandante". *Eagle Security Police, Inc., v. Dorado*, 211 DPR 70, 83 (2023); Regla 10.2 de Procedimiento Civil, *supra*. En lo pertinente, el inciso (5) de dicha regla establece que una parte demandada puede fundamentar su petición de desestimación invocando la defensa de que la demanda deja de exponer una reclamación que justifique la concesión de un remedio. *Díaz Vázquez v. Colón Pena*, 214 DPR 1135, 1149 (2024); *Trans-Oceanic Life Ins., v. Oracle Corp., supra*, pág. 701. De esta forma, la desestimación que se solicita se dirige a atender el caso en sus méritos y no a sus aspectos procesales. *Eagle Security Police, Inc., v. Dorado, supra*, pág. 83; *Montañez v. Hosp. Metropolitano*, 157 DPR 96, 104-105 (2002).

Una vez se radica una moción bajo la Regla 10.2(5) de Procedimiento Civil, *supra*, los tribunales tienen la obligación de

tomar como ciertos- y de la forma más favorable para la parte demandante- todos los hechos bien alegados en la demanda y que hayan sido aseverados de forma clara y concluyente. *González Méndez v. Acción Social*, 196 DPR 213, 234-235 (2016); *Rivera Sanfeliz v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho procesal civil*, 6ª ed. rev., San Juan, Ed. LexisNexis de Puerto Rico, 2017, pág. 307. Asimismo, los tribunales están llamados a interpretar las alegaciones de forma conjunta, liberal y de la forma más favorable a la parte demandante. *González Méndez v. Acción Social, supra*, pág. 234; *Torres, Torres v. Torres Serrano*, 179 DPR 481, 501-502 (2010). Por lo tanto, para que proceda una solicitud de desestimación de esta índole, " 'tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de Derecho que se pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor' ". *Eagle Security Police, Inc., v. Dorado, supra*, pág. 84 (*citando a Rivera Sanfeliz v. Jta. Dir. FirstBank, supra*, pág. 49).

Nótese que nuestro sistema jurídico no establece requisitos complejos para la redacción de una demanda. *Eagle Security Police, Inc., v. Dorado, supra*, pág. 84; Regla 6.5 de Procedimiento Civil, *supra*, R. 6.5. Lo anterior se debe a que "la finalidad del proceso legal está enmarcado en el principio rector de impartir justicia y no en

fórmulas técnicas en la redacción de las alegaciones". *Eagle Security Police, Inc., v. Dorado, supra,* pág. 84. Se desprende de la Regla 6.5(a) de Procedimiento Civil, *supra,* R. 6.5(a), que "[c]ada aseveración en una alegación será sencilla, concisa y directa. No se exigirán fórmulas técnicas para la redacción de las alegaciones o mociones. Todas las alegaciones se interpretarán con el propósito de hacer justicia". De igual modo, la Regla 6.1 de Procedimiento Civil, *supra,* R. 6.1, expone que:

> Una alegación que exponga una solicitud de remedio contendrá:
> (1) una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y
> (2) una solicitud del remedio a que crea tener derecho. Podrán ser solicitados remedios alternativos o de diversa naturaleza.

Así, "el demandante no está obligado a alegar todos los hechos que prueben su caso al incoar una causa de acción, es decir, no tiene que exponer con detalle el trasfondo fáctico en el que basa su reclamación". *Eagle Security Police, Inc., v. Dorado, supra*, págs. 84-85; *Teoniro v. Hospital Dr. Pila*, 159 DPR 777, 784 (2003). Es harto conocido que "el propósito de las alegaciones es notificarle de forma general a la parte demandada cuáles son las reclamaciones en su contra para que pueda comparecer a defenderse si así lo desea". *Eagle Security Police, Inc., v. Dorado, supra*, pág. 85.

## C.

La doctrina de justiciabilidad requiere que exista un caso o controversia real para que los tribunales puedan ejercer su jurisdicción válidamente. *Rivera Segarra v. Rivera Lassen*, 214 DPR 111, 132 (2024); *Hernández Montañez v. Parés Alicea*, 208 DPR 727, 738 (2022). Los tribunales deben analizar los factores y las circunstancias del mismo para determinar si pueden ejercer su discreción en cuanto a dicho límite constitucional. *Comisión Asuntos de la Mujer v. Srio. de Justicia*, 109 DPR 715, 720-721 (1980). La intervención de los tribunales tendrá lugar "únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real en obtener un remedio que haya de afectar sus relaciones jurídicas". *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 60 (2009); *Estado Libre Asociado de P.R. v. Aguayo*, 80 DPR 552, 558-559 (1958).

Un asunto no es justiciable (1) cuando se trata de resolver una cuestión política; (2) cuando una de las partes no tiene capacidad jurídica (legitimación activa o *standing*) para promover un pleito; (3) cuando después de comenzado un pleito, unos hechos posteriores lo convierten en académico; (4) cuando las partes buscan obtener una opinión consultiva, o (5) cuando se promueve un pleito que no está maduro. *Suárez Cáceres v. Com. Estatal Elecciones*, *supra*, pág. 61; *Noriega v. Hernández Colón*, 135 DPR 406, 421-422 (1994).

Además de capacidad para demandar, la parte promovente debe demostrar que posee un interés legítimo. La legitimación es la facultad para comparecer y actuar en un juicio como demandante, demandado, tercero o en representación de cualquiera de ellos. De este modo, el demandante debe ostentar legitimación activa y el demandado debe poseer legitimación pasiva. *Mapfre v. E.L.A.*, 188 DPR 517, 532-533 (2013); *Álvareztorre Muñiz v. Sorani Jiménez*, 175 DPR 398, 420 (2009). Nuestro máximo foro ha definido la legitimación activa como " 'la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante' ". *Hernández Montañez v. Parés Alicea, supra,* pág. 739 (*citando a Rivera Segarra v. Rivera Lassen, supra,* pág. 133). En esencia, "el examen de la legitimación activa es un mecanismo usado por los tribunales para delimitar su propia jurisdicción y no adentrarse en los dominios de otras ramas de gobierno, y no lanzarse a resolver cuestiones hipotéticas o planteadas dentro de un contexto inadecuado". *Hernández Torres v. Hernández Colón,* 131 DPR 593, 598 (1992); *E.L.A. v. P.R. Tel. Co.,* 114 DPR 394, 399 (1983). Este elemento de justiciabilidad es diferente a los otros " 'porque gira primordialmente en torno a la parte que prosigue la acción y sólo secundariamente en cuanto a las cuestiones a adjudicarse' ". *Co. Ópticos de P.R. v. Vani Visual Center,*

124 DPR 559, 564 (1989) (*citando a Comisión Asuntos de la Mujer v. Srio. de Justicia, supra*, pág. 723). Ahora bien, para probar que posee legitimación activa, la parte promovente tiene que demostrar que (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge al palio de la Constitución o de una ley. *Hernández Montañez v. Parés Alicea, supra*, pág. 739; *Bhatia Gautier v. Gobernador*, 199 DPR 59, 69 (2017).

### III.

Luego de un análisis objetivo y cuidadoso del expediente original del TPI y del recurso de *certiorari,* nos abstenemos de ejercer nuestra función revisora y de intervenir con la determinación del foro *a quo*. El expediente del caso de epígrafe no evidencia falta alguna atribuible al TPI en la ejecución de sus funciones adjudicativas, de modo que resulte meritorio expresarnos sobre lo resuelto en esta etapa de los procedimientos. Ante la ausencia de razón alguna que mueva nuestro criterio discrecional de expedir el auto de *certiorari,* conforme a la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, denegamos expedir el recurso de *certiorari*.

**IV.**

Por las razones discutidas anteriormente, denegamos expedir el auto de *certiorari* y devolvemos el caso al foro primario para la continuación de los procedimientos.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones